## UNITED STATES v. POMEROY.

(Circuit Court, S. D. New York. February 27, 1907.)

1. FINES—DEATH OF PARTY—ABATEMENT.

Where accused was convicted of giving rebates, in violation of the interstate commerce act and its amendments, and sentenced to pay a fine, but died after judgment before the fine was paid, the judgment and entire proceedings abated on his death, and it was not a claim enforceable against his personal representatives.

2. SAME—COURT'S JURISDICTION.

Where decedent had been sentenced to pay a fine for giving rebates, in violation of the interstate commerce act, and judgment had been entered against him before he died, but had not been paid, the court in which the judgment was rendered had jurisdiction to abate the proceedings, on the motion of decedent's personal representatives, on notice to the government.

Albert H. Harris (Austin G. Fox and John D. Lindsay, of counsel), for the motion.

Henry L. Stimson, U. S. Atty.

HOLT, District Judge. This is a motion by the executrix of the will of Frederick L. Pomeroy that the entire proceedings and the judgment

heretofore rendered herein against Frederick L. Pomeroy be declared abated by reason of his death. Frederick L. Pomeroy was indicted and convicted of the offense of giving rebates, in violation of the interstate commerce act and the acts amending it. He was sentenced to pay a fine of $6,000, and judgment against him for that amount was entered. He afterwards died. This motion is made on the ground that the proceedings and the judgment abated upon his death.

It is well settled that all prosecutions for crimes before judgment are abated by the death of the party charged. When the punishment for a crime is imprisonment, the death of the convict, of course, puts an end to the punishment; but, upon the question whether a judgment in a criminal prosecution imposing a fine as a punishment is abrogated by the defendant's death, there appears to be very little authority. In actions of tort, it is well settled that the death of the defendant before a verdict or a decision of a court or referee terminates the liability. If death occurs after a verdict or decision, but before judgment, judgment can be entered on it nunc pro tunc; and, after a judgment is entered, the judgment becomes a debt, and is enforceable against the estate notwithstanding the defendant's death. But this rule of law in actions of tort, permitting judgments recovered before the defendant's death to be enforced against his estate after his death, is based on the idea of compensation to a particular plaintiff injured, while the imposition of a fine as a punishment for a crime is based on the idea of punishment for a public offense.

The district attorney, in his argument, lays considerable stress upon the effect of section 1041 of the Revised Statutes of the United States [U. S. Comp. St. 1901, p. 724], which provides as follows:

"In all criminal or penal causes in which judgment or sentence has been or shall be rendered, imposing the payment of a fine or penalty, whether alone or with any other kind of punishment, the said judgment, so far as the fine or penalty is concerned, may be enforced by execution against the property of the defendant in like manner as judgments in civil cases are enforced."

I think that this provision is merely a re-enactment of the general rule of common law that a criminal sentence for a fine may be enforced by execution. This was clearly settled at common law. Rex v. Woolf, 1 Chitty, 401, 428, 583. But I infer from the report of this case that the defendant was living when the question arose. The real question was whether the payment of a fine imposed in a criminal case could be enforced by execution or only by imprisonment. I think that section 1041 of the United States Revised Statutes simply establishes the common-law rule in such a case in the federal courts. The execution to be issued is "against the property of the defendant." It does not in terms provide for proceedings against the estate of a deceased defendant.

The only direct authority cited by the district attorney is a quotation from Williams on Executors, as follows:

"An executor or administrator is also liable upon all statutes and recognizances entered into by the deceased; and upon all inferior debts of record of the deceased, as fines imposed by the justices at Westminster, or at assizes or quarter sessions, or by commissioners of sewers or of bankrupts, by stewards in leets, or the like." 2 Williams on Executors (10th Ed.) p. 1367.

The note citing authorities in support of this passage is: "Went. Off. Ex. (14th Ed.) p. 243. But see Anon. Cro. Jac. 219." The book called "Wentworth on the Office of Executors" was first published in 1641. It purports to have been written by Sir Thomas Wentworth, but its authorship is generally ascribed to Justice Doddcridge. The passage cited is as follows:

"Now, touching debts of record, much need not be said (except of those by statute merchant), for to debts and damages already recovered against the testator, and to debts by recognizance, the executor's liableness is somewhat clear and conspicuous. Yet other inferior debts upon record may fitly be thought of as issues forfeited, fines imposed by justices at Westminster or at assizes, quarter sessions, commissioners of sewers or bankrupts, by stewards in leets, or the like; for all these are debts of record which executors stand charged withal."

The statement in Williams on Executors is obviously simply copied from this statement in Wentworth on the Office of Executors.

The anonymous case referred to in Sir George Croke's Reports of Cases in the time of James I, and commonly cited as "Cro. Jac.," is very brief. The following is the entire report:

"It was doubted in the Star Chamber, if costs and damages be recovered there of one in a riot, whether his executors and administrators shall be chargeable therewith.

"Walter said there were precedents in this court that he should be charged; and some of the clerks affirmed so much.

"Lord Coke held they were not chargeable for a riot; but if damages or costs were given by any statute there, upon recovery in that court it shall be otherwise."

By this report I understand that Lord Coke held that, if a criminal fine were imposed upon a defendant as a punishment for rioting, his executors were not chargeable with its payment; but that, if a statute gave costs or damages to anybody who had been injured by a riot, a judgment for that amount could be enforced against the executors. If that is the meaning, the case in Cro. Jac. is certainly entitled to more weight than the mere statement in a text-book written in the time of Charles I for which no authority is given. Moreover, at that time in England bills of attainder were common, and the idea of the corruption of blood and of estates in the hands of heirs being made liable for the crimes of their ancestors was regarded as a usual basis of criminal legislation.

The counsel for the executrix cites several western cases in which courts have held that an appeal from a judgment for a fine is abated by the death of the defendant: Herrington v. State, 53 Ga. 552; O'Sullivan v. People, 144 Ill. 604, 32 N. E. 192, 20 L. R. A. 143; Town of Carrollton v. Rhomberg, 78 Mo. 547; State v. Perrine, 56 Mo. 602; March v. State, 5 Tex. App. 450; State v. Ellvin, 51 Kan. 784, 33 Pac. 547; Overland C. M. Co. v. People, 32 Colo. 263, 75 Pac. 924, 105 Am. St. Rep. 74.

The district attorney argues that these cases are simply authorities for the proposition that, after the defendant's death, the proceedings on appeal abate, leaving the judgment appealed from in full force. If the only effect of the defendant's death is to abate the writ of error, it, of course, leaves the judgment in full force. No appeal in criminal

cases was allowed in the United States courts till 1879. It is obviously a kind of injustice that the representatives of a deceased defendant should lose the right of appeal by the defendant's death; but as a right of appeal in any case is a favor afforded by the government, it might be, if there were no other ground for abatement, that the death of the party appealing would simply deprive him of that right. In some of these western cases, however, it is clearly asserted that the defendant's death terminates the entire prosecution and the judgment entered imposing the fine. But those expressions may be claimed to be obiter. It is also urged by the district attorney that the entry of a formal judgment for a fine in favor of the United States against the defendant establishes the liability as a debt. It is true that a judgment is often in law regarded as creating a new and distinct liability. In suits for torts or for unliquidated damages, it is sometimes held that the judgment creates a debt in the place of what before was an unliquidated demand. But a judgment, after all, is nothing but a new form of an obligation. Its original essence remains unchanged. Courts, whenever necessary, look beneath the form of the judgment to see what was the original nature of the claim. For instance, the general rule is that the courts of no country enforce the penal laws of another country; and if a judgment is entered in one country to enforce its penal laws, and a suit is brought on the judgment in another state or country, the court in which such suit is brought will take notice of the fact that the original judgment was based on a penal law, and refuse to allow a recovery for that reason. Wisconsin v. Pelican Ins. Co., 127 U. S. 265, 8 Sup. Ct. 1370, 32 L. Ed. 239; Huntington v. Attrill, 146 U. S. 657, 13 Sup. Ct. 224, 36 L. Ed. 1123; Black on Judgments, § 870.

Upon the whole there is in my opinion no satisfactory authority controlling this case. It must therefore be decided on fundamental principles. In my opinion the fundamental principle applicable to this case is that the object of criminal punishment is to punish the criminal, and not to punish his family. When A. recovers a judgment against B. for a tort, the recovery is undoubtedly based on the defendant's misconduct; but the fundamental principle upon which the action is maintained is the idea of compensating the injured party; but, when a court imposes a fine for the commission of a crime, there is no idea of compensation involved. In this case the defendant was fined $6,000. That money was not awarded as compensation to the United States. No harm had been done to the United States. It was imposed as a punishment of the defendant for his offense. If, while he lived, it had been collected, he would have been punished by the deprivation of that amount from his estate; but, upon his death, there is no justice in punishing his family for his offense. It may be said, of course, that there is very little difference between the loss which his family would have sustained if the money had been collected before his death, and the loss which it will now sustain if it is collected from his estate. But if the money had been collected before his death, he would have been punished. If it is collected now, his family will be punished, and he will not be punished. In my opinion, therefore, this prosecution should be deemed ended and this judgment abated by the defendant's death.

I have had some doubt whether this court should make an order declaring the judgment and the proceedings abated, or whether it should leave the matter to be determined in some other court if an attempt should be made to collect the judgment. But it is certainly just to the representatives of the estate that the question should be determined, and I think it may as properly be determined by the court which rendered the judgment as by some other tribunal. The government has had notice of this motion, and has been heard upon it, and in my opinion this court has power to declare that all the proceedings in this case and the judgment entered therein against the defendant Pomeroy were abated by his death.

My conclusion is that an order should be entered declaring that the proceedings and the judgment have abated, and are no longer of any validity.