142 P.3d 599 (2006)
STATE of Washington, Petitioner,
v.
Jules DEVIN, Respondent.
No. 76947-8.
Supreme Court of Washington, En Banc.
Argued March 14, 2006.
Decided August 24, 2006.
Brian Martin McDonald, King County Prosecutor's Office, Seattle, for Petitioner/Appellant.
Gregory Charles Link, Washington Appellate Project, Seattle, for Appellee/Respondent.
William Berggren Collins, Carol A. Murphy, Attorney General's Office, Olympia, Amicus Curiae on behalf of Attorney General of Washington.
ALEXANDER, C.J.
¶1 The Court of Appeals vacated the attempted murder conviction of Jules Devin because, after his conviction, Devin died. We hold that, because Devin failed to file a timely appeal, it was error to apply the common law rule that when a criminal appellant dies with an appeal pending, the underlying conviction is abated as if it never happened. Furthermore, we agree with the State that the abatement rule, first established in 1914 in State v. Furth, 82 Wash. 665, 667, 144 P. 907 (1914), is in conflict with modern laws that compensate crime victims for their suffering. Accordingly, we overrule Furth to the extent that it vacates challenged convictions automatically upon an appellant's death, regardless of whether the unresolved appeal has merit or whether compensation is still owed to victims.

I. FACTS
*600 ¶ 2 On January 4, 2002, Jacqueline Galan[1] was shot in the face and neck while standing in the driveway of her Burien home as her 3-year-old daughter sat in the car nearby. At the time of the shooting, Galan was engaged in a child custody dispute with Phillip Devin, the son of Jules Devin. In May 2003, a jury convicted Jules Devin of the first degree attempted murder of Galan, his daughter-in-law. On September 12, 2003, Devin received a standard-range sentence of 300 months in prison and was ordered to pay a $500 victim penalty assessment to King County. Restitution to the victim was neither required nor ruled out at that time. At sentencing, Devin signed a "notice of rights on appeal" in which he acknowledged his right to appeal the conviction as well as a sentence outside the standard range. Clerk's Papers (CP) at 14. He was advised that his sentence was inside the standard range and that "unless a written notice of appeal is filed within 30 days after the entry of this judgment (today), the right of appeal is irrevocably waived." Id.
¶ 3 Shortly after Devin was sentenced, Galan obtained sole custody of her 3-year-old daughter. In awarding custody, the court said that Phillip Devin had cultivated a climate of fear and intimidation within his family and that his violence and threats "ultimately culminated in" his father, Jules Devin shooting Galan in front of the child. State's Mot. to Reconsider Order Vacating Conviction, App. B at 6.
¶ 4 On December 30, 2003, the King County prosecutor's office notified the court that it was unable to set a restitution amount for Galan. The prosecutor indicated that she "did not want to claim" restitution, that attempts to reach Galan had failed, and also that her health insurer had provided no documentation of its coverage of her medical costs. CP at 17.
¶ 5 Although Devin had been notified at sentencing that any appeal must be filed within 30 days, he waited nearly six months to file a notice of appeal. In his March 5, 2004, notice of appeal, Devin sought review only of his sentence, not his conviction.[2]
¶ 6 About a month later, Devin's newly appointed appellate counsel was notified that Devin's notice of appeal was not timely. On May 3, 2004, Devin moved to enlarge the time for filing a notice of appeal in an attempt to cure the timeliness problem.
¶ 7 In his motion to enlarge, Devin inaccurately stated that in his March 2004 notice of appeal, he sought review of his conviction, not just his sentence. Devin contended in his motion that (1) his trial counsel reportedly recalled that Devin's family agreed not to pursue an appeal, but (2) trial counsel "has not said" whether Devin himself instructed him to forgo an appeal, and (3) Devin "never elected not to appeal his case and apparently assumed a notice of appeal was filed." Mot. to Enlarge to File Notice of Appeal at 2. Based on these alleged facts, which lacked documentation, Devin contended that the record did not show that he voluntarily waived his right to appeal. The State opposed Devin's motion, pointing out that he provided no affidavits or sworn declarations from his trial counsel, himself, or others, supporting his claim that he intended all along to appeal his conviction. The State asked for a reference hearing to explore what communications took place between trial counsel and Devin and to determine if Devin voluntarily waived his right to appeal.[3]
¶8 On June 6, 2004, the Court of Appeals remanded the motion to enlarge to the King County Superior Court with instructions to hold a reference hearing within 60 days. Although it is not clear from the record exactly when Devin died, on November 15, 2004, Devin's counsel moved to "reverse" Devin's conviction "because Mr. Devin has died." Appellant's Mot. to Reverse & Dismiss Conviction at 1. This motion again inaccurately *601 stated that Devin's March 2004 notice of appeal was for both his conviction and sentence. The court was told that Devin's death occurred "[p]rior to the ordered reference hearing" and that although the notice of appeal was untimely, "the State has not established that the tardy filing of the notice was the result of a knowing, intelligent and voluntary waiver of the right" to appeal. Id. at 3, 4. The motion stated that because Devin died while pursuing an appeal, his conviction must be dismissed pursuant to Furth, 82 Wash. 665, 144 P. 907.
¶9 On February 11, 2005, the Court of Appeals issued the following brief order: "The attorney representing Jules Devin has moved to reverse his conviction and remand this case to the superior court for dismissal because Devin has died. We have considered the motion and determined that the conviction should be vacated and the appeal dismissed." Order Vacating Conviction & Dismissing Appeal. A month later, the court issued an equally brief order sayingwithout explanationthat the State's motion for reconsideration was denied.
¶10 The King County prosecutor, on behalf of the State of Washington, petitioned this court for review of two issues: (1) whether the Furth abatement doctrine should be abandoned in light of modern victim rights policies, and (2) whether the doctrine should apply where the deceased defendant's notice of appeal was not timely. The petition included Galan's sworn declaration that the abatement of Devin's conviction has distressed her emotionally. She expressed fear that the abatement could lead to a reopening of the child custody case, which would aggravate her anxiety about the possibility of more violence. Amicus curiae, the attorney general of Washington, supported the State's position on behalf of crime victims.

II. ANALYSIS
¶11 The abatement rule first surfaced in Washington more than 90 years ago in Furth. This court said in that case, "The courts of the country, both state and Federal, have, with marked unanimity, held that the death of the defendant in a criminal case pending appeal, in the absence of a statute expressing the contrary, permanently abates the action and all proceedings under the judgment." Furth, 82 Wash. at 667, 144 P. 907. "The underlying principle is that the object of all criminal punishment is to punish the one who committed the crime or offense, and not to punish those upon whom his estate is cast by operation of law or otherwise." Id. (citations omitted).
¶ 12 Furth relied partly on the reasoning of United States v. Pomeroy, 152 F. 279 (1907), rev'd on other grounds sub nom. United States v. N.Y. Cent. & Hudson River R.R., 164 F. 324 (2d Cir.1908). In one of the earliest expressions of the policy underlying abatement, Pomeroy said that "the fundamental principle applicable to this case is that the object of criminal punishment is to punish the criminal, and not to punish his family." Id. at 282 (emphasis added).
In this case the defendant was fined $6,000. That money was not awarded as compensation to the United States. No harm had been done to the United States. It was imposed as a punishment of the defendant for his offense. If, while he lived, it had been collected, he would have been punished by the deprivation of that amount from his estate; but, upon his death, there is no justice in punishing his family for his offense.
Id. (emphasis added). Thus, the concern was with shielding innocent heirs from financial obligations intended to punish their deceased ancestors.
¶ 13 The defendant in Furth had been convicted of aiding and abetting the receiving of deposits by an insolvent bank. He was fined $10,000 plus costs and was ordered to remain in custody "until such fine and costs are paid." Furth, 82 Wash. at 667, 144 P. 907. He died while his appeal was pending, and both the State and the executrix of Furth's estate asked the court to decide the appeal on the merits. In response, this court examined Pomeroy and other cases around the country in which the abatement rule was applied and concluded, "We think the action abated as to the appellant Furth upon his *602 death." Id. at 672, 144 P. 907. Therein, Washington's abatement rule was born.

A.
¶ 14 Besides Furth, the only published opinion in Washington applying the abatement rule is State v. Banks, 94 Wash. 237, 237-38, 161 P. 1189 (1917), consisting of a mere three paragraphs. The State contends that in Banks and Furth, this court did not clearly adopt the doctrine known as "abatement ab initio," which abates the underlying conviction and not just unpaid financial penalties upon the death of an appellant. Suppl. Br. of Pet'r at 13. Thus, the first question in this case is whether Furth or Banks embraced the "ab initio" doctrine. If not, the abatement in this case should have extended only to Devin's $500 victim penalty assessment, if it remained unpaid, and not to the underlying conviction.
¶ 15 The State points out that in Furth, this court did not just declare the action abated due to death but actually addressed the merits of the appeal and reversed the deceased defendant's conviction based on insufficient evidence. Furth, 82 Wash. at 672, 679, 144 P. 907. This might suggest that, under the rule announced in Furth, convictions are not abated unless there is some meritorious claim of trial court error. But in Banks, 94 Wash. at 238, 161 P. 1189, we clarified that we addressed the merits of the appeal in Furth only because the other defendants in that case were still being tried. We also said there was no pending trial in the Banks case that justified deciding the merits of the appeal in question there. Id. Then, citing Furth, we concluded (without discussion) that "[t]he action has abated by the death of appellant, and must, for that reason, be dismissed." Id. Thus, Banks suggested that unless vacation of the deceased defendant's conviction could affect codefendants still to be tried, it is required regardless of the merits of the pending appeal.
¶ 16 Furthermore, although Furth does not explicitly require vacating of convictions, it discusses several cases in which the underlying judgments were reversed. See United States v. Mitchell, 163 F. 1014, 1016-17 (1908); Pomeroy, 152 F. at 283; Boyd v. State, 3 Okla.Crim. 684, 108 P. 431 (1910). In citing those cases as support for abating the "action" in Furth, this court appeared to embrace the "ab initio" rule. See also Tim A. Thomas, Annotation, Abatement of State Criminal Case by Accused's Death Pending Appeal of ConvictionModern Cases, 80 A.L.R.4th 189, § 2, at 191 (2005) ("[i]t appears that the most frequently stated rule is that ... the prosecution abates from the inception of the case . . .."). In light of Furth's reliance on cases applying the "ab initio" doctrine, and the prevailing common law rule that abatement extends to the underlying conviction and not just to financial penalties, we conclude that Furth announced an abatement rule consistent with the "ab initio" doctrine.

B.
¶ 17 The next question is whether the Furth rule requires vacation of a conviction even when the conviction was not timely appealed. Here, the State argues that when Devin died his appeal was not "pending," for the purpose of applying the Furth rule, because (1) he was advised that if he failed to appeal his conviction within 30 days of sentencing, his right to appeal would be irrevocably waived, (2) he nevertheless waited six months to file a notice of appeal, and (3) before his death he offered no declaration or other proof supporting his explanation of the delay. Devin's counsel responds that because Devin filed a notice of appeal and because the State agreed that a reference hearing was needed to determine if the late appeal could proceed, his appeal was in fact "pending" when he died. Suppl. Br. of Resp't at 20.
¶ 18 Boyd, one of the cases discussed in Furth, is instructive in determining if Devin's appeal was pending for the purposes of applying the abatement rule. In Boyd, the March court said that the prosecution of a crime abates "`when the accused has taken an appeal in the manner prescribed by law'" and then dies while such an appeal is pending. Boyd, 3 Okla.Crim. 684, 108 P. 431 (emphasis added) (quoting March v. State, 5 Tex.App. 450 (1879)). By citing Boyd as support for adopting the abatement rule in Washington, this court implicitly agreed with that case that abatement should apply only *603 when the deceased appellant filed an appeal "in the manner prescribed by law." Here, Devin filed his notice of appeal five months later than prescribed by RAP 5.2(a). Therefore, Devin's untimely attempt at an appeal should not have triggered abatement under Furth.
¶ 19 Devin's counsel asserts that if a defendant still has the right to appeal at death, he should be treated the same as a defendant whose appeal is pending because in either case the conviction is not "final." Suppl. Br. of Resp't at 11, 20. For that argument, counsel relies upon United States v. Oberlin, 718 F.2d 894 (9th Cir.1983), in which the court abated the conviction of a man who committed suicide within hours of receiving a guilty verdict, before an appeal could be filed. The court said in that case:
[A]t the time of his death, Oberlin possessed an appeal of right from his conviction. We conclude that, although Oberlin did not die pending appeal, the effect of his death is the samethe prosecution abates ab initio. We see no reason to treat a criminal defendant who dies before judgment is entered any differently from one who dies after a notice of appeal has been filed. In either case, he is denied the resolution of the merits of the case on appeal.
Oberlin, 718 F.2d at 896. But here, unlike in Oberlin, Devin did not miss the chance to file an appeal. He actually filed one, and chose to appeal only his sentence not his conviction. Therefore, even if we agreed with the reasoning of Oberlin, we could not fairly conclude that Devin was "denied the resolution of the merits" of an appeal as to his guilt. If Devin himself declined to challenge his guilty verdict, why should this state's courts erase it for him posthumously?
¶ 20 The other flaw in this argument is that it assumes Devin still had the right to appeal his conviction when he died. Devin's counsel cites State v. Kells, 134 Wash.2d 309, 949 P.2d 818 (1998), for the proposition that the right to appeal a conviction exists until the State proves that the right was waived. We said in Kells that "there can be no presumption in favor of waiver of a constitutional right," and that "a criminal appeal may not be dismissed as untimely unless the State demonstrates that the defendant voluntarily, knowingly, and intelligently abandoned his appeal right." Id. at 313, 949 P.2d 818. But Kells actually undermines the argument that Devin still had a right to appeal when he died. That is because here, unlike in Kells, the State has demonstrated a voluntary, knowing, and intelligent waiver: Devin was warned that he would irrevocably waive his right to appeal if he failed to pursue it within 30 days, and yet he did just that. We are presented with no evidence to the contrary.[4] Furthermore, in Kells the issue was whether the defendant could voluntarily waive a right that he was not told he had.[5] In this case, by contrast, it is undisputed that Devin was fully informed of the relevant appeal rights. Thus, we need not be concerned that Devin might have done something differently with proper notice. In sum, Devin's counsel is incorrect in arguing that Devin still had the right to appeal his conviction when he died.
¶ 21 In conclusion, because Devin did not file a timely appeal of his conviction before his death, his conviction should not have been vacated simply because he died. We hold that the Furth rule does not require vacation of a conviction that was not appealed in a manner prescribed by law.

C.
¶ 22 Because of our holding that Furth was incorrectly applied in this case, we *604 need not reach the question of whether to modify or abandon the Furth rule. However, in light of the extensive briefing on that question, its importance to victim rights, and the likelihood that it will come up again, we take this opportunity to address it.
¶ 23 In debating whether this court should overturn Furth, the parties in this case have focused on the doctrine of stare decisis, which requires certain conditions to be met before a rule is abandoned. Before we turn to stare decisis, however, we note that Furth itself envisioned that its abatement rule would yield to contrary statutes. Furth said, "The courts ... have, with marked unanimity, held that the death of the defendant in a criminal case pending appeal, in the absence of a statute expressing the contrary, permanently abates the action and all proceedings under the judgment." Furth, 82 Wash. at 667, 144 P. 907 (emphasis added). Many years after Furth was decided, the legislature adopted a statute requiring payment of restitution to victims of felonies. RCW 7.69.030. At least arguably, that statute trumps the Furth abatement rule because it "expresses" a mandate "contrary" to abatement of all penalties and proceedings.
¶ 24 We now turn to the State's request to abandon the Furth "ab initio" rule. "The doctrine of stare decisis `requires a clear showing that an established rule is incorrect and harmful before it is abandoned.'" Riehl v. Foodmaker, Inc., 152 Wash.2d 138, 147, 94 P.3d 930 (2004) (quoting In re Rights to Waters of Stranger Creek, 77 Wash.2d 649, 653, 466 P.2d 508 (1970)). Thus, the first question is whether the "ab initio" rule is incorrect.
¶ 25 The State and amicus argue that it is incorrect because it is based on the outdated premise that convictions and sentences serve only to punish criminals, and not to compensate their victims. Indeed, since Furth was decided, the people amended our state constitution to "ensure victims a meaningful role in the criminal justice system and to accord them due dignity and respect" by guaranteeing notice and an opportunity to be heard at relevant proceedings. CONST. ART. I, § 35. Also, RCW 7.69.030 establishes various "rights" of victims, including restitution in all felony cases ("unless extraordinary circumstances" make restitution inappropriate (RCW 7.69.030(15))). RCW 43.280.080 creates an office of crime victims advocacy to advocate for victims' rights. And RCW 7.68.035 requires convicted defendants to pay "penalty assessments" to counties as part of a victim's compensation program. Thus, Furth's fundamental principle"that the object of all criminal punishment is to punish the one who committed the crime or offense"simply does not reflect the compensation purpose served by restitution and victim penalty assessments. Furth, 82 Wash. at 667, 144 P. 907.
¶ 26 Devin's counsel cites State v. Kinneman, 155 Wash.2d 272, 281, 119 P.3d 350 (2005), for the proposition that "`restitution is punishment'" rather than compensation. Suppl. Br. of Resp't at 17. This is highly misleading. Kinneman actually says, "In Washington restitution is both punitive and compensatory," and "[r]estitution is at least as punitive as compensatory." Kinneman, 155 Wash.2d at 279-80, 281, 119 P.3d 350. Thus, even recognizing a strong punitive component to restitution, the point remains that it also serves a compensatory purpose and that Furth is incorrect in stating that the "only" purpose of all criminal punishment is to punish the offender.
¶ 27 The State and amicus also argue that the "ab initio" doctrine is incorrect for another reason: it rests on a presumption that convicted criminals are innocent and that their pending appeals ultimately would prevail. The United States Supreme Court said in Herrera v. Collins, 506 U.S. 390, 399, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993), "Once a defendant has been afforded a fair trial and convicted of the offense for which he was charged, the presumption of innocence disappears." Similarly, this court has said that an accused person is presumed innocent "until found guilty beyond a reasonable doubt." State v. Salle, 34 Wash.2d 183, 190, 208 P.2d 872 (1949). Consistent with that holding, we have found no constitutional right to bail pending appeal. State v. Smith, 84 Wash.2d 498, 499-500, 527 P.2d 674 (1974). Furthermore, we have allowed prosecutors to impeach a defendant's credibility with a "presumptively *605 valid prior conviction" although it was subject to a pending appeal. State v. Murray, 86 Wash.2d 165, 166, 543 P.2d 332 (1975). These cases establish that there is no presumption of innocence pending appeal. Accordingly, we conclude that Furth is incorrect in light of later decisions cutting off the presumption of innocence after conviction, and in view of modern compensatory statutes.
¶ 28 Devin's counsel defends the correctness of the "ab initio" doctrine by pointing to its prevalence in federal appellate court decisions. Indeed, the rule that a conviction abates on the death of the accused before his appeal has been decided is "followed almost unanimously by the Courts of Appeals." United States v. Christopher, 273 F.3d 294, 297 (3d Cir.2001). Devin's counsel also argues that 27 states have adopted the doctrine and that the dominant theme among decisions in those states "is that an appeal of right is a fundamental component of the criminal process, and that without such an appeal the conviction is not final." Suppl. Br. of Resp't at 7.
¶ 29 It is true that our state constitution guarantees a right of appeal. State v. Sweet, 90 Wash.2d 282, 581 P.2d 579 (1978). But Devin's counsel points to no opinion holding that the constitution also requires abatement of a conviction when a defendant dies pending an appeal.
¶ 30 Having concluded that the "ab initio" rule is incorrect, we must next determine whether it is also harmful. The State argues that the rule is harmful because it may deprive crime victims of compensation required by law and because of "important collateral consequences," including emotional distress, lessened ability to recover a civil judgment, and potential impacts on family court proceedings. Pet. for Review at 6.
¶ 31 Recently, at least two courts have invoked emotional harm as a reason to depart from common law abatement rules.
Abatement ab initio allows a defendant to stand as if he never had been indicted or convicted. The State points out in its briefing that, while the defendant will never be able to appreciate the benefits of abatement, such a result "is particularly unfair to crime victims who have participated in often times painful trials only to see a hard won conviction overturned ... based upon the arbitrary timing of the defendant's death."
State v. Korsen, 141 Idaho 445, 111 P.3d 130, 134 (2005) (citation omitted). "[A]batement of the conviction would deny the victim of the fairness, respect and dignity guaranteed by these [victim rights] laws by preventing the finality and closure they are designed to provide." Id. at 135; see also Wheat v. State, 907 So.2d 461, 464 (Ala.2005) (recognizing "`the callous impact'" that vacating a conviction "`necessarily has on the surviving victims of violent crime'" (quoting People v. Robinson, 298 Ill.App.3d 866, 873, 699 N.E.2d 1086, 232 Ill.Dec. 901 (1998))).
¶ 32 While Galan apparently declined to seek restitution and therefore did not suffer financial harm from the abatement in this case, she was shocked and distressed when Devin's record was wiped clean, and she fears renewed violence and strife if the child custody case is reopened. These impacts alone, as described in her declaration, make the abatement rule "harmful" as applied here.
¶ 33 Devin's counsel protests that some of the harms feared by Galan, such as a weakening of her position in the child custody dispute with Devin's son, may never come to pass. But this court is not concerned only with certain, identifiable harms. Besides, any harm to Devin's heirs from restoring the conviction is equally speculative. Nothing in the record establishes that Devin's heirs would suffer financially in the absence of abatement. In fact, the only financial obligation reflected in Devin's judgment and sentence was the $500 victim penalty fee, and nobody has suggested that the fee was unpaid at the time of abatement or that it would burden the estate today.
¶ 34 In sum, the basis of the abatement rule is to prevent financial harm to a convicted criminal's heirs.[6] If our State's goal is to ward off potential harm to innocent people, it *606 makes no sense to protect the heirs of criminals but not their victims. The Furth rule threatens to deprive victims of restitution that is supposed to compensate them for losses caused by criminals. Article I, section 35 of our state constitution demands that the victims of crime receive "due dignity and respect." Therefore, we conclude that both the "harmful" and "incorrect" prongs of the test for overcoming stare decisis are met. Accordingly, we overrule Furth to the extent that it automatically abates convictions as well as victim compensation orders upon the death of a defendant during a pending appeal.
¶ 35 In so doing, we do not preclude courts from abating financial penalties still owed to the county or State, as opposed to restitution owed to victims, where the death of a defendant pending an appeal creates a risk of unfairly burdening the defendant's heirs. We also do not preclude courts from deciding a criminal appeal on the merits after the appellant has died, if doing so is warranted. We decline, though, to fashion a new doctrine in place of the Furth "ab initio" rule, as suggested by the State and amicus.

III. CONCLUSION
¶ 36 Furth no longer makes sense in light of victim compensation policies enacted since it was decided. It was incorrectly applied in this case because the defendant had no pending appeal of his conviction when he died. Therefore, this court reverses the order of the Court of Appeals vacating the conviction of Jules Devin and overrules Furth as explained above.
Concurring: C. JOHNSON, MADSEN, BRIDGE, CHAMBERS, OWENS, FAIRHURST, J.M. JOHNSON, JJ.
SANDERS, J. (concurring).
¶ 37 I concur in the holding that prosecution of Jules Devin does not abate because he failed to timely appeal his conviction. However, the majority's discussion of the merits of the doctrine of abatement ab initio is obiter dicta in its entirety. "The issue to which the statement relates was not before the court and, therefore, the statement did not and could not announce our adherence to such a rule." State ex rel. Johnson v. Funkhouser, 52 Wash.2d 370, 374, 325 P.2d 297 (1958). The doctrine of abatement ab initio reflects the "`fundamental principle ... that the object of criminal punishment is to punish the criminal, and not to punish his family.'" State v. Furth, 82 Wash. 665, 668, 144 P. 907 (1914) (quoting United States v. Pomeroy, 152 F. 279, 282 (1907), rev'd on other grounds sub nom. United States v. N.Y. Cent. & Hudson River R.R., 164 F. 324 (2d Cir.1908)). Accordingly, prosecution must cease with the death of the accused. Abatement ab initio is a venerable fixture of Washington law, and it remains the law of the State.
NOTES
[1] At the time of the shooting, Ms. Galan went by her married name of Jacqueline Devin.
[2] The notice of appeal said, "The Defendant: Jules D. Devin [s]eeks review by the Court of Appeals of the: sentence entered on: Sept. 12, 2003." CP at 16. It said nothing about the May 2003 conviction.
[3] At that time, the State conceded that the record did not establish a voluntary waiver of Devin's right to appeal. The State later argued that such a concession was in error and that this court is not bound by an erroneous concession related to a matter of law.
[4] It is immaterial whether, at the time that Devin sought to cure his timeliness problem, his trial counsel had "not said" to Devin's appellate counsel whether Devin himself agreed with his family's wish to forgo an appeal. Even if this unsworn assertion is true, it merely reflects a lack of precision in communications between Devin's trial and appellate attorneys. In the absence of an affidavit or declaration establishing that Devin actually told his trial attorney to file an appeal and that such instruction was somehow forgotten, misunderstood, or ignored, we are unable to conclude that Devin did not voluntarily, knowingly, and intelligently waive his right to appeal.
[5] Specifically, the defendant asserted he had not waived his right to appeal the juvenile court's declination order because he was not told that he maintained such a right after pleading guilty. Kells, 134 Wash.2d at 312, 949 P.2d 818.
[6] There is no requirement in Furth to find actual harm from allowing a conviction to stand.