[No. 84660-0.   En Banc.]
Argued June 30, 2011.      Decided May 3, 2012.

THE STATE OF WASHINGTON, *Petitioner*, v. YUSSUF HUSSEIN
ABDULLE, *Respondent*.

*Daniel T. Satterberg, Prosecuting Attorney,* and *Michael J. Pellicciotti* and *James M. Whisman, Deputies,* for petitioner.

*Jared B. Steed, Eric Broman,* and *Jennifer J. Sweigert* (of *Nielsen, Broman & Koch PLLC*), for respondent.

¶1 ALEXANDER, J.[*] — We granted the State's petition to review a decision of the Court of Appeals in which that court reversed Yussuf Abdulle's first degree theft and forgery convictions based on *State v. Davis,* 73 Wn.2d 271, 438 P.2d 185 (1968). In *Davis,* this court held, at a hearing to determine the admissibility of a defendant's statement, that if the defendant denies waiving his *Miranda*[1] rights and the State fails, without explanation, to call other police officers who witnessed the interrogation in order to corroborate the waiver, the defendant's custodial statements are inadmissible. The State urges us to overrule *Davis,* arguing that it is incorrect because it rests on the mistaken view that *Miranda* requires proof of waiver beyond a reasonable doubt and harmful because it keeps relevant evidence from the trier of fact. We agree that *Davis* is incorrect in light of cases that issued from the United States Supreme Court following *Miranda.* We, therefore, reverse the Court of Appeals and reinstate Abdulle's convictions.

---

[*] Justice Gerry L. Alexander is serving as a justice pro tempore of the Supreme Court pursuant to Washington Constitution article IV, section 2(a).

[1] *Miranda v. Arizona,* 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

I

¶2 One morning in June 2008, the accounting manager at a Puget Sound Security office in Bellevue prepared payroll checks and placed them in an outgoing mail basket. Later that morning, a recently fired employee of Puget Sound Security, Yussuf Abdulle, stopped by the company office to pick up his last paycheck and drop off his uniform. That same day, a man matching Abdulle's description attempted to deposit two Puget Sound Security payroll checks into the Bank of America account of Hiback Omar, Adbulle's cousin. One of the checks was made out to Lauren Burns and the other to Michael Wittenmann. The bank declined to accept the deposits, and bank security was called.

¶3 A bank manager thereafter advised Puget Sound Security that the payroll checks were at a Bank of America branch. Puget Sound Security then called the Bellevue Police Department. Detective Steven Hoover was thereafter assigned to the case. The bank provided the officer with surveillance photos of the person attempting to make the deposit. Burns and Wittenmann each indicated that they did not give Abdulle permission to take the checks. No one witnessed the checks being taken, and there was conflicting testimony at trial about whether the bank tellers were able to identify Abdulle from a photomontage as the man who attempted to deposit the checks.

¶4 In August 2008, Detective Hoover and Detective Rich Newell of the Bellevue Police Department arrested Abdulle at the Expedia Building in Bellevue, where he was working as a security guard. He was then charged in King County Superior Court with two counts of forgery and one count of first degree theft. At a confession hearing held pursuant to CrR 3.5, Detective Hoover testified that Detective Newell drove their police car to the police station while Hoover and Abdulle sat in the backseat of the car. Hoover said that the

car was a regular sedan with no screen between the front seat and backseat. Hoover indicated that he read Abdulle his rights under the *Miranda* decision and told him he had been arrested for taking checks from Puget Sound Security. Abdulle initially denied taking the checks. Detective Hoover then told Abdulle they had photographs of him attempting to deposit the checks. At this point, Abdulle said he wanted to talk to an attorney. Detective Hoover testified that a few minutes later Abdulle "said he would talk to me but he wanted a cigarette and a glass of water first." 1 Tr. of Proceedings (May 11, 2009) at 18.

¶5 The police detectives then parked the police car in a fenced area of the police station parking garage, and Newell was dispatched to fetch Abdulle the cigarette and glass of water. Detective Hoover testified that Abdulle told him "they were out to get him, Puget Sound Security, and that they fired him for no reason, that he was mad and needed some money and so he took a check and that he tried to cash that check at a bank in Chinatown." *Id.* at 22. Hoover also testified that Abdulle acknowledged that he was the person in the bank's surveillance photos and that he had attempted to cash the checks.

¶6 Abdulle also testified at the CrR 3.5 hearing. His testimony differed from Detective Hoover's on a number of important points. According to Abdulle, Hoover continued questioning him after he had asked for a lawyer. Abdulle also denied agreeing to make a statement in exchange for a glass of water and a cigarette. Abdulle said that when they arrived at the police station, he asked the officers to return a cigarette they had taken from him. The State acknowledged that if the judge accepted Abdulle's version of events, the statement he gave to the police officers should be suppressed.

¶7 The superior court judge presiding at the confession hearing admitted Abdulle's statement after concluding that the State had met its burden of showing by a preponderance of the evidence that Abdulle made the statement attributed

to him knowingly, intelligently, and voluntarily. No one raised the fact that Detective Newell, who was present throughout much of Detective Hoover's and Abdulle's interactions, was not called to testify at the CrR 3.5 hearing. The jury trial on the charges against Abdulle commenced the same day. The jury heard Detective Hoover testify that Abdulle admitted that he took the checks and attempted to deposit them. Abdulle was found guilty of all three charges.

¶8 On appeal to the Court of Appeals, Abdulle argued for the first time that the State had not met the burden it had under *Davis* of showing that his confession was voluntary. The argument was based on the fact that Detective Newell's failure to testify was not explained as required by *Davis*. The State responded that Abdulle waived a *Davis* challenge because he had not raised the issue at the trial court. The Court of Appeals rejected the State's waiver argument and concluded that the trial court erred in admitting Abdulle's statements, reasoning that "it is the State's burden to present available corroborating evidence or explain its absence. By failing to do either, the State failed to present sufficient evidence of waiver." *State v. Abdulle*, noted at 155 Wn. App. 1046, 2010 WL 1756792, at *3, 2010 Wash. App. LEXIS 902, at *8. It then reversed and remanded for a new trial.

¶9 The State petitioned for review on the sole issue that *Davis* was "erroneous in light of later clarification [of *Miranda*] by the United States Supreme Court." Pet. for Review at 1. We granted the State's petition.

II

¶10 "The doctrine of stare decisis 'requires a clear showing that an established rule is incorrect and harmful before it is abandoned.'" *Riehl v. Foodmaker, Inc.*, 152 Wn.2d 138, 147, 94 P.3d 930 (2004) (quoting *In re Rights to Waters of Stranger Creek*, 77 Wn.2d 649, 653, 466 P.2d 508 (1970)). An opinion can be incorrect when it was announced,

or it can become incorrect because the passage of time and the development of legal doctrines undermine its bases. For example, in *State v. Devin*, 158 Wn.2d 157, 142 P.3d 599 (2006), we overruled our opinion in *State v. Furth*, 82 Wash. 665, 144 P. 907 (1914), in which we had held that a defendant's death during the pendency of an appeal abates a criminal conviction. *See Furth*, 82 Wash. at 667 (citing *United States v. Pomeroy*, 152 F. 279 (S.D.N.Y. 1907), *rev'd on other grounds sub nom. United States v. N.Y. Cent. & Hudson River R.R.*, 164 F. 324 (2d Cir. 1908)). In *Devin*, we concluded that our past holding in *Furth* was incorrect because it was "based on the outdated premise that convictions and sentences serve only to punish criminals, and not to compensate their victims" and on the old view that the presumption of innocence persisted through an appeal. *Devin*, 158 Wn.2d at 168; *Furth*, 82 Wash. at 667. We also determined that *Furth* was harmful because some crime victims experience shock and distress when they learn that their attackers' records have been wiped clean and because it could have adverse collateral effects in other cases and against the right to restitution. *Devin*, 158 Wn.2d at 171-72. Therefore, applying de novo review, we overruled the opinion.

## III

¶11 *Davis* was this court's first opportunity to apply *Miranda*. The case arose out of a " 'swearing contest' " between a sheriff's captain and James Belknap, one of four codefendants convicted of attempting to escape from the Spokane County Jail. *Davis*, 73 Wn.2d at 286. According to the captain, Belknap waived his *Miranda* rights and admitted that he had played a part in the escape attempt. Belknap, on the other hand, claimed that he was told that the State might not prosecute if he cooperated and that when he was questioned about the escape attempt, he informed the captain that he would refuse to answer questions until he had consulted with his attorney. The trial

court believed the captain and ruled that Belknap's alleged admissions were voluntary and admissible.

¶12  On appeal, Davis argued that because he denied the captain's version of the alleged admissions and because an undersheriff, who was included in the list of the State's witnesses, was neither called by the State nor his absence explained (even though the undersheriff was present during the interrogation), "the trial court erred in refusing to instruct the jury on the 'missing witness' rule, *i.e.*, the failure . . . to produce the undersheriff as a witness to verify Belknap's waiver of his constitutional rights raised an inference that his testimony would have been unfavorable to the state's case." *Id.* at 275-76. The missing witness rule had been defined in an earlier opinion as follows:

> "[I]t has become a well established rule that where evidence which would properly be part of a case is within the control of the party whose interest it would naturally be to produce it, and, without satisfactory explanation, he fails to do so, — the jury may draw an inference that it would be unfavorable to him."

*Id.* at 276 (internal quotation marks omitted) (quoting *Wright v. Safeway Stores, Inc.*, 7 Wn.2d 341, 346, 109 P.2d 542 (1941)). This court observed that while the undersheriff was "the only other available source of evidence relative to this dispute, the prosecutor failed to call him as a witness or to explain his absence." *Id.* at 279. Thus, we held that Belknap had established the circumstances giving rise to the inference of the missing witness rule and that the trial court erred in failing to instruct the jury accordingly.

¶13  In so holding, we emphasized that the missing witness rule was permissive, not mandatory:

> [W]hen the missing witness rule is applicable the jury should be instructed that they *may* draw an unfavorable inference against the party failing to call the missing witness, if they believe such inference is warranted under all the circumstances, and should not be instructed that there is a presumption against that party.

*Id.* at 281 (emphasis added). In ruling on Belknap's second assignment of error, however, that the trial court erred in allowing into evidence the captain's testimony concerning Belknap's alleged admissions, we effectively transformed the missing witness rule into a conclusive presumption.

¶14 Our decision was shaped by the United States Supreme Court's statement in *Miranda* that " 'a *heavy burden* rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination.' " *Id.* at 284-85 (quoting *Miranda*, 384 U.S. at 475). By "heavy burden," we understood the United States Supreme Court to mean in *Miranda* "proof beyond a reasonable doubt."[2] We stated bluntly, "But for the holding in *Miranda*, we would have no hesitancy in sustaining the trial court's findings." *Id.* at 283. "[I]n light of *Miranda*'s placing a heavy burden of proof on the prosecution," we said the "real issue" was whether "we must now require a greater quantum and quality of proof than we did in pre-*Miranda* cases when we apply the 'substantial evidence' test upon review of a trial court's findings as to the validity of an accused's waiver." *Id.* at 284. We stated that "a review of cases, in which the issue of the admissibility of a confession had to be resolved on the basis of a 'swearing contest,' indicates that almost invariably the police officer was held by the trial court to be more credible than the accused." *Id.* at 286. We then noted that some authorities had interpreted *Miranda* to mean

> "[t]hat confessions achieved by custodial interrogation are regarded with so much distrust by the *Miranda* justices that something resembling a presumption against their admissibility is taking shape. Though calling this a presumption of police misconduct and perjury might not be accurate, and would doubtless be resented, it should be recognized that the evidentiary problem of proving a valid waiver of *Miranda*

---

[2] After noting that some courts applying *Miranda* required proof beyond a reasonable doubt, we observed that "[t]he latter view seems to be . . . correct." *Davis*, 73 Wn.2d at 286.

rights is not much different from what it would be if such a presumption existed."

*Id.* at 287 (alteration in original) (quoting 19 Am. Jur. Proof of Facts 72-73 (1967)).[3] Although we said that we did not "particularly subscribe to this interpretation," we went on to indicate:

> [W]e do believe that the Supreme Court intended a mandate to require the adoption of more credible and sophisticated techniques of proof than was formerly the case. So long as interrogation takes place in isolated circumstances, with no one present who is either favorable to the accused or suited for the role of a neutral and impartial observer, some firmer guaranty that constitutional rights have been observed will normally be necessary than can be provided by a mere "swearing contest" between the accused and one interrogating police officer.

*Id.* at 287-88. In keeping with this understanding of *Miranda*, we held that the prosecution had not "met the burden of proving the validity of Belknap's alleged waiver as required by the holding in *Miranda*." *Id.* at 288. We stressed that the captain's testimony was neither corroborated by other testimony nor supported by other independent evidence, and we pointed to the fact that an undersheriff, "who was the only other person present during the interrogation, was not called as a corroborating witness by the prosecution[,] nor was his absence explained."[4] *Id.* We said that "this last element may be deemed determinative." *Id.*

---

[3] We emphasized the following passage in particular: " '*Whatever the testimony of the authorities* as to waiver of rights by an accused, the fact of lengthy interrogation or incommunicado incarceration before a statement is made is strong evidence that the accused did not validly waive his rights. . . . Moreover, *any evidence* that the accused was threatened, tricked, or cajoled into a waiver will, of course, show that the defendant did not voluntarily waive his privilege.' " *Id.* at 287 (alteration in original) (quoting *Miranda*, 384 U.S. at 476).

[4] In fact, the State had explained the undersheriff's absence during a recess of the trial, and this explanation appeared in its appellate brief, but there was nothing in the record of the trial to substantiate this explanation. After observing that "cases on appeal must be decided on the record made in the trial court," we said that "for the purpose of considering this issue, we must assume that the state's failure to call the undersheriff was unexplained at the time of trial." *Id.* at 276.

¶15 Seven years after *Miranda*, the United States Supreme Court clarified that the State's "heavy burden" could be met by a preponderance of the evidence. *Lego v. Twomey*, 404 U.S. 477, 92 S. Ct. 619, 30 L. Ed. 2d 618 (1972). The Court pointed out that "the States are free, pursuant to their own law, to adopt a higher standard" and "may indeed differ as to the appropriate resolution of the values they find at stake." *Id.* at 489. In *State v. Braun*, 82 Wn.2d 157, 162, 509 P.2d 742 (1973), however, this court followed *Lego* in holding that "[t]he state bears the burden of proving voluntariness by a preponderance of the evidence."

¶16 We agree with the State that *Davis* is incorrect in light of the United States Supreme Court's clarification in *Lego* of *Miranda*'s "heavy burden." Whether in *Davis* this court misunderstood *Miranda*,[5] it is certainly true that the result in *Davis* is not mandated by *Miranda*'s progeny. We also agree that the rule we adopted in *Davis* is harmful because it keeps relevant evidence from the trier of fact. Accordingly, we overrule *Davis* insofar as it holds that the prosecution can never meet its burden of proving a valid waiver of *Miranda* rights if it fails, without explanation, to call as corroborating witnesses all officers who witnessed the defendant's interrogation.

## Conclusion

¶17 We hold that Abdulle's statements were not inadmissible at trial merely because the State failed, without explanation, to call a second officer to corroborate Abdulle's waiver of *Miranda* rights. A court is, however, free to draw a negative inference from the second officer's absence but is

---

[5] Notably, *Lego* was written by a *Miranda* dissenter. *Lego*, 404 U.S. at 478 ("Mr. Justice WHITE delivered the opinion of the Court."); *Miranda*, 384 U.S. at 526 ("Mr. Justice WHITE . . . dissenting").

not required to do so. We, therefore, reverse the Court of Appeals and affirm Abdulle's convictions.[6]

MADSEN, C.J., and OWENS, J.M. JOHNSON, and WIGGINS, JJ., concur.

¶18 STEPHENS, J. (dissenting) — Over 40 years ago, this court weighed the interests at stake in admitting confessions into evidence and concluded that something more than a "swearing contest" is required to prove a defendant validly waived *Miranda*[7] rights before confessing. *State v. Davis*, 73 Wn.2d 271, 287-88, 438 P.2d 185 (1968). Today, the majority thinks differently. I dissent because the concerns we expressed in *Davis* have only intensified. Substantial research confirms there is a very real risk of involuntary confessions by suspects in custody. *See, e.g.*, Saul M. Kassin et al., *Police-Induced Confessions: Risk Factors and Recommendations*, 34 LAW & HUM. BEHAV. 3 (2010) (finding that interrogation techniques produce high rates of involuntary confessions and advocating for the recording of all custodial interrogations); Brandon L. Garrett, *The Substance of False Confessions*, 62 STAN. L. REV. 1051, 1052-53 (2010) (finding that 42 of the 252 inmates exonerated by the innocence project had falsely confessed to their crime). In light of valid concerns about the reliability of custodial confessions, this court should maintain its safeguards, not abandon them.

¶19 The majority seems to suggest that our decision in *Davis* was based on little more than blind obeisance to then-existing United States Supreme Court precedent.

---

[6] Prior to the oral argument before this court, Abdulle moved to strike an argument that the State presented in its supplemental brief to the effect that the Court of Appeals erred in reversing the trial court on a claim raised for the first time on appeal. Abdulle contends that this argument should not be considered by this court because it was not raised in the State's petition for review. Because the instant decision is based entirely on an argument that was raised in the State's petition, we dismiss Abdulle's motion to strike on grounds of mootness.

[7] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

Thus, the majority maintains, we rested our holding on the "heavy burden" mandated by the Supreme Court in *Miranda,* majority at 418, but later followed *Lego v. Twomey,* 404 U.S. 477, 92 S. Ct. 619, 30 L. Ed. 2d 618 (1972), in concluding this burden is met when voluntariness is established by a preponderance of the evidence. Majority at 420 (citing *State v. Braun,* 82 Wn.2d 157, 162, 509 P.2d 742 (1973)).

¶20 In fact, there was more to our decision in *Davis.* This court held that Washington requires "some firmer guaranty that constitutional rights have been observed . . . than can be provided by a mere 'swearing contest' between the accused and one interrogating police officer." *Davis,* 73 Wn.2d at 287-88. Our reasoning was based on the concern for "the dual purposes of (1) protecting the individual from the potentiality of compulsion or coercion inherent in in-custody interrogation, and (2) protecting the individual from deceptive practices of interrogation." *State v. Hensler,* 109 Wn.2d 357, 362, 745 P.2d 34 (1987) (citing *Heinemann v. Whitman County,* 105 Wn.2d 796, 806, 718 P.2d 789 (1986)). Subsequent to *Davis,* we reiterated in *State v. Erho,* 77 Wn.2d 553, 557-59, 463 P.2d 779 (1970), that judicial confidence in the voluntariness of a custodial confession rests on requiring corroborating testimony of other officers present at the scene.

¶21 The concerns we identified in *Davis* and *Erho* have not abated. False confessions are second only to faulty eyewitness identifications in producing invalid convictions, accounting for 14 to 25 percent of all exonerations. Jon B. Gould & Richard A. Leo, *One Hundred Years Later: Wrongful Convictions After a Century of Research,* 100 J. CRIM. L. & CRIMINOLOGY 825, 844 (2010). Increasingly, research has focused on the relationship between police interrogation methods and unreliable confessions. Garrett, *supra,* at 1052-53 (noting increased awareness among scholars, courts, legislators, and law enforcement that innocent people falsely confess due to psychological pressure during

interrogations). While the concern over false confessions goes well beyond the question of whether a suspect validly waived *Miranda* rights, it highlights the importance of judicial safeguards to closely examine the voluntariness of custodial confessions. After all, "[c]onfessions are among the most powerful forms of evidence introduced in a court of law." Richard A. Leo et al., *Bringing Reliability Back In: False Confessions and Legal Safeguards in the Twenty-First Century*, 2006 Wis. L. Rev. 479, 485.

¶22 Moreover, it remains true that when the voluntariness of a confession is tested by only a "swearing contest," "almost invariably the police officer [will be] held by the trial court to be more credible than the accused." *Davis*, 73 Wn.2d at 286. The problem is compounded by the fact that the officer testifying is "the very person who allegedly violated the accused's constitutional rights." *Id.* To ensure confidence in custodial confessions, something more than a "swearing contest" must be required to prove that defendants voluntarily waived their *Miranda* rights. That "something more" is corroborating testimony or evidence, which this court recognized is generally within the State's ability to provide. *Id.* at 286-87; *Erho*, 77 Wn.2d at 558-59.

¶23 Adhering to our precedent places no undue burden on the State. As we observed in *Davis*, in contrast to the accused, police have "numerous methods and techniques of establishing corroborating testimony and independent supporting evidence." 73 Wn.2d at 287; *see also State v. Haack*, 88 Wn. App. 423, 433-35, 958 P.2d 1001 (1997) (noting the burden is to present corroborating evidence *when available*). Moreover, it is the State's burden to establish the defendant effected a knowing, intelligent, and voluntary waiver of the right to remain silent.[8]

---

[8] Because the State bears the burden to present corroborating evidence or explain its absence, I agree with the Court of Appeals that Abdulle did not waive his right to raise the *Davis* issue by failing to argue it below. *State v. Abdulle*, noted at 155

¶24 The rule we adopted over 40 years ago in *Davis* is still sound. Confessions derived from police interrogation present special concerns, so it is wise to require something more than a "swearing contest" to prove their voluntariness. Adhering to our precedent, I would affirm the Court of Appeals and hold that absent corroborating evidence or proof that such evidence is unavailable, Abdulle's custodial confession was inadmissible.

C. JOHNSON, CHAMBERS, and FAIRHURST, JJ., concur with STEPHENS, J.

---

Wn. App 1046, 2010 WL 1756792, at *3, 2010 Wash. App. LEXIS 902, at *8. The majority does not state any quarrel with this conclusion.