# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 73311-7-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| STEVEN RICHARD HOUSER, | ) | PUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: October 24, 2016 |
| | ) | |

VERELLEN, C.J. — A missing witness instruction should be used sparingly and is inapplicable where the missing witness's testimony would necessarily be self-incriminating.

Steven Houser appeals his conviction for felony driving while under the influence of intoxicants (DUI). He argues his conviction should be reversed because the trial court misapplied the missing witness doctrine and improperly instructed the jury. Houser testified that "Gary" was driving when Houser's truck left the road and struck a pole, injuring Houser. Houser does not know where Gary went after the accident. If Gary corroborated Houser's theory of the case, he would necessarily have incriminated himself for failing to remain at the scene of an accident. Therefore, the missing witness instruction should not have been given. Because the core of Houser's defense was that he was not driving, we cannot conclude the instruction, in

combination with the prosecutor's multiple references to Gary's absence, was harmless.

Therefore, we reverse Houser's conviction and remand for a new trial.

## FACTS

Around 9:00 p.m. on May 19, 2013, Steven Houser knocked on the door of Sherry and Frank Hathaway's Deming, Washington home. Houser appeared "a little disabled" to Sherry, and had a bloody nose and a swollen lip.[1] Sherry called 911 while Frank went outside with Houser. Houser told Frank he put his truck in a ditch about a mile up the road. He seemed excited and somewhat disoriented. He answered only some of Frank's questions and gave slow responses.

Emergency medical technicians arrived shortly after and attended to Houser. State Patrol Troopers Eric Magnussen and Travis Lipton arrived about 30 minutes later. Trooper Magnuson noticed Houser had a swollen lip, bloodshot, watery eyes, and a flushed face. Houser told the trooper he had driven off the road and hit a pole and had walked to the Hathaways' to use their phone. Houser said he had three to four beers that night and that he had been drinking all the way from a friend's house to the scene of the accident.

Trooper Magnuson asked Houser if he was willing to submit to field sobriety tests. Houser agreed, and the trooper performed the horizontal gaze nystagmus test, which indicated impairment. Houser then agreed to a voluntary portable breathalyzer test. When the troopers arrested him, Houser became agitated and hostile, yelling, "I

---

[1] Report of Proceedings (RP) (Mar. 4, 2016) at 126.

wasn't even driving. My buddy was driving" and that they could not prove Houser was the driver.[2]

The troopers drove to the accident site. They did not see anyone on the road along the way. Instead of negotiating the almost 90-degree turn in the road, Houser's truck had gone straight off the road, through a fence, and into a large pole. There was damage to the right side of the truck, the left front quarter panel, and the bumper. There was glass on the driver's side floorboard that appeared to have come from the broken driver's side window. The passenger side window was also broken, and a large fence post was wedged up against the passenger side door. There was blood on the steering wheel, which seemed consistent with Houser's bloody nose and swollen lip. There was a beer can inside the truck, along with a piece of mail with Houser's name on it.

After impounding the truck, the troopers took Houser to the hospital and applied for a blood draw. Hospital staff examined Houser and found broken glass consistent with the glass found on the driver's side floorboard of the truck inside his shoes. Houser confirmed he had consumed alcohol within the last 24 hours, but denied driving. Houser's blood draw registered a blood alcohol content level of 0.19.

The State charged Houser with felony DUI. Houser was the only defense witness. He testified that on the afternoon of May 19, 2013, he bought beer at a gas station and drove to his friends' house. His friends were not there, so Houser waited for them in his truck. As he was waiting, Houser saw Gary walking down the road. Houser lived next door to Gary when he was 19, but Houser had not seen Gary in

---

[2] RP (Mar. 4, 2015) at 177; RP (Mar. 5, 2015) at 354.

about 15 years. Houser and Gary decided to drive and find some marijuana for Gary. Houser testified Gary drove Houser's truck because Houser had already been drinking beer. After getting some marijuana, they drove to a grocery store and Houser continued to drink beer. They then began driving to another friend's house, and got into the accident along the way.

Houser testified Gary was driving and Houser was in the passenger seat when the accident occurred. Houser remembered going off the road, but did not remember getting out of the truck. He testified that Gary did not remain in the truck, but did not know what happened to him. Houser did not know how Gary got out of the truck or whether he was injured. He testified he had not been in contact with Gary since the accident, did not know how to contact him, and had not tried to contact him. None of this information had been provided to the State before Houser testified.

After both sides had rested, the State requested a missing witness jury instruction. Houser objected, noting he had been unable to conduct an investigation to find Gary. The trial court allowed the instruction and permitted the State to refer to the defense's failure to call Gary to corroborate Houser's theory of the case in its closing argument.

The jury found Houser guilty. The court imposed a standard range sentence. Houser appeals.

## ANALYSIS

Houser argues his conviction should be reversed because the trial court misapplied the missing witness doctrine and improperly instructed the jury. We agree with Houser.

4

We review the trial court's decision to give a missing witness instruction for an abuse of discretion.[3] "When a trial court's exercise of its discretion is manifestly unreasonable or based upon untenable grounds or reasons, an abuse of discretion exists."[4] We review de novo whether legal error in jury instructions could have misled the jury.[5]

The missing witness doctrine permits the jury to infer that evidence or testimony would be unfavorable to a party if that "'evidence which would properly be part of a case is within the control of the party whose interest it would naturally be to produce it'" and that party fails to do so.[6]

> Where the missing witness instruction is requested by a party and given by the court, the judge informs the jury that if a person who could have been a witness at the trial is not called to testify, the jury may infer that the person's testimony would have been unfavorable to the party who would naturally have called that witness.[7]

The missing witness "instruction should be *used sparingly*."[8] The limitations on the application of the missing witness doctrine "are particularly important when, as here, the doctrine is applied against a criminal defendant."[9] The doctrine applies only

---

[3] In re Det. of Alsteen, 159 Wn. App. 93, 99, 244 P.3d 991 (2010).

[4] State v. Powell, 126 Wn.2d 244, 258, 893 P.2d 615 (1995).

[5] State v. Montgomery, 163 Wn.2d 577, 597, 183 P.3d 267 (2008).

[6] State v. Sundberg, 185 Wn.2d 147, 153, 370 P.3d 1 (2016) (quoting State v. Blair, 117 Wn.2d 479, 485-86, 816 P.2d 718 (1991)).

[7] Id. at 154.

[8] 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 5.20 note on use at 177 (3d ed. 2008) (emphasis added); see also 5 KARL B. TEGLAND, WASHINGTON PRACTICE: EVIDENCE LAW AND PRACTICE § 402.8, at 291 (6th ed. 2016) (The missing witness "requirements are sufficiently rigorous to make the rule rarely applicable in practice, especially in criminal cases.").

[9] Montgomery, 163 Wn.2d at 598.

if several requirements have been satisfied.[10] The doctrine does *not* apply where the missing witness's testimony, if favorable to the party who would naturally have called the witness, would necessarily be self-incriminating.[11]

Here, Houser testified that Gary was driving, Houser was in the passenger seat when the accident occurred, and Gary did not remain in the truck. Houser also testified about his injuries. Thus, if Gary corroborated Houser's testimony, Gary would necessarily have incriminated himself for failing to remain at the scene of an accident. Under RCW 46.52.020, the driver of any vehicle involved in an accident resulting in injury to any person "shall . . . in every event remain at[ ] the scene of such accident until he or she has fulfilled the requirements of subsection (3) of this section." RCW 46.52.020(3) provides in pertinent part that the driver "shall give his or her name, address, . . . and shall render to any person injured in such accident reasonable assistance."

Houser objected to the missing witness instruction.[12] The trial court was thus obligated to make a careful inquiry into whether the missing witness doctrine

---

[10] State v. Cheatam, 150 Wn.2d at 652-53 (The missing witness doctrine applies only if (1) the absent witness is particularly within the defense's ability to produce, (2) the missing testimony is not merely cumulative, (3) the witness's absence is not satisfactorily explained, (4) the witness is not incompetent or his testimony privileged, and (5) the testimony does not infringe on the defendant's constitutional rights); Montgomery, 163 Wn.2d at 598-99.

[11] State v. Blair, 117 Wn.2d 479, 489-90, 816 P.2d 718 (1991); State v. Gregory, 158 Wn.2d 759, 846, 147 P.3d 1201 (2006), overruled on other grounds by State v. W.R., Jr., 181 Wn.2d 757, 336 P.3d 1134 (2014).

[12] Houser's objection adequately apprised the trial court that he disputed the instruction; his specific objection focused on his inability to locate Gary. See RP (Mar. 5, 2015) at 463.

applied.[13] But here, the trial court considered Houser's ability to produce Gary and then concluded, "I think it's appropriate to allow the instruction," without engaging in any other inquiry.[14] The premise of a missing witness instruction is that there is no reasonable explanation why the party did not produce a favorable witness. That premise completely fails when the missing witness's favorable testimony necessarily would be self-incriminating. If Gary corroborated Houser's testimony, he would necessarily have implicated himself. Because Gary's absence was satisfactorily explained, the missing witness instruction should not have been given.

The State asserts any error was harmless because the prosecutor reiterated in closing argument that the State bore the burden of proof and that Houser bore no burden.

An improper missing witness jury instruction can be harmless error if the jury was properly instructed on the State's burden.[15] "'An erroneous instruction is harmless if, from the record in [the] case, it appears beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained. Whether a flawed jury instruction is harmless error depends on the facts of a particular case.'"[16]

Here, the core of Houser's defense was that he was not driving. Giving a missing witness instruction and allowing the prosecutor to comment on Gary's

---

[13] See Montgomery, 163 Wn.2d at 597 (it is error for a judge to give a missing witness instruction unless there is evidence supporting each of the factors).

[14] RP (Mar. 5, 2015) at 463-64.

[15] Montgomery, 163 Wn.2d at 600.

[16] Id. (alteration in original) (internal quotation marks omitted) (quoting State v. Carter, 154 Wn.2d 71, 81, 109 P.3d 823 (2005)).

absence here substantially undercut Houser's defense. During rebuttal closing argument, the prosecutor argued,

> You can consider what's reasonable to you. Would you, if you think you are fine, you admit to driving and talking to law enforcement . . . but then the moment you get arrested knowing you are in trouble, if you weren't the driver, would you have changed that story? Would you have not gone out to try to find witnesses to help support your story what you did that day?[17]

> Why didn't any of those witnesses[18] come to you and tell you anything that corroborates his story? Why didn't he do that? Nothing. There is no evidence but what he told you that supports his story.

> . . . .

> Look at the instructions in terms of the missing witness that didn't come to testify. No evidence to support what he is claiming and having 654 days to try to find somebody or try to find the supposed Gary that he said was the driver.[19]

> [W]hy this is the first time ever in almost two years we have ever heard about Gary, why no one has contacted law enforcement to admit, hey, I am a witness; hey, I was the driver. No one has come forward. If they had, they normally would have followed up on that investigation. There is no evidence that there is nobody else there. When I asked him, well, what happened to Gary after the collision? He goes I don't know. How did he get out? I don't know. Mr. Hathaway was concerned there was somebody else possibly injured, if there was somebody else in the car. But there wasn't.[20]

While there was evidence sufficient to support a conviction, there was not overwhelming evidence of guilt. Therefore, we cannot conclude the missing witness

---

[17] RP (Mar. 6, 2015) at 540-41.

[18] While there were arguably references made to other missing witnesses, the prosecutor emphasized Gary's absence. Because Gary's testimony would necessarily be self-incriminating, the instruction should not have been given.

[19] RP (Mar. 6, 2015) at 545-46.

[20] Id. at 551.

instruction, in combination with the prosecutor's multiple references to Gary's absence, was harmless.

We reverse and remand for further proceedings consistent with this opinion.[21]

_____

WE CONCUR:

_____

_____

_____

_____

[21] Accordingly, we need not address the other issues Houser raises on appeal.