# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

STATE OF WASHINGTON,

                Respondent,

        v.

MOLLY KATHLEEN BARTON,

                Appellant.

No. 79456-6-I

DIVISION ONE

UNPUBLISHED OPINION

APPELWICK, J. — Barton challenges her conviction for assault in the fourth degree and assault in the second degree. She claims she was denied a fair trial because the trial court declined to instruct the jury on the missing witness doctrine. We affirm.

## FACTS

In September 2000, Molly Barton gave birth to a son, C.B. Molly and the father lived together for the first few months of C.B.'s life. The father moved out after about five months.

When C.B. was 12, his mother began abusing him. The abuse intensified when the pair moved to the Lake Ki Recreational Vehicle Resort. On one occasion, he awoke to his mother strangling him. On another, she struck him in the head with a metal pipe. She struck him with a wine bottle on two separate occasions. She would also hit him in the back of the knees with a police baton. On several occasions, she twisted his toes upward while he slept, causing them to bruise,

Citations and pin cites are based on the Westlaw online version of the cited material.

swell, and break. She once pressed a knife to his throat so hard that it left a visible red mark. C.B. also alleged various incidents of sexual abuse.

After the incident where Barton held a knife to C.B.'s throat, he went to a neighbor's house. He claims he told this neighbor, Jay Landells, what had happened, and that Landells had taken pictures of the injury. C.B. then stayed with Landells for a few days.

One evening, Barton punched C.B. in the nose, causing it to bleed on his shirt. The next day, C.B. called the police and Child Protective Services (CPS) and told them what had happened. Multiple sheriff's deputies arrived at his home to interview him. They removed him from the home and into a facility called Cedar House. He was eventually placed in his father's custody.

As a part of their investigation, police interviewed Landells. Police attempted to find the photos of C.B.'s knife injury on Landells's phone by conducting a forensic analysis of the device. But, they were unable to find the photos. During their interview, Landells informed police that he would be moving out of state. The record does not evidence that Landells provided a relocation address.

The State charged Barton with three counts of assault in the second degree, one count of third degree rape of a child, and one count of second degree rape of a child. The prosecutor did not call Landells as a witness because he had moved out of state. The parties discussed whether the missing witness doctrine would be applicable. The prosecutor called the detective who interviewed Landells and sought to question him about the interview. Defense counsel objected to allowing

2

the officer to testify whether Landells moved to Montana. He argued that the officer had no personal knowledge of Landells's whereabouts, and therefore the information would have been hearsay.

When it came time to assemble the jury instructions, Barton proposed including an instruction informing the jury of the missing witness doctrine. She asserted that they had requested an interview with Landells, but that the State had refused to facilitate it. The State argued against inclusion of the instruction. The trial court did not include the missing witness instruction in its final instructions. When given an opportunity by the court to take formal exceptions or objections to the instructions, defense counsel did not object to its omission.

A jury found Barton guilty of one count of assault in the second degree and one count of the lesser included offense of assault in the fourth degree. It was unable to reach a verdict on the remaining count of assault in the second degree and on both rape charges.

Barton appeals.

DISCUSSION

Barton argues that she was denied a fair trial because the trial court declined to include an instruction on the missing witness doctrine. She argues that she was entitled to the instruction based on the State's failure to call Landells to testify.

Before instructing the jury, the trial court is required to provide counsel with the proposed instructions. CrR 6.15(c). Counsel is then afforded the opportunity to formally object to the inclusion or exclusion of any instructions. CrR 6.15(c).

Failure to object at that time waives the issue on appeal, unless refusal to give the instruction was a manifest error affecting a constitutional right. See State v. O'Brien, 164 Wn. App. 924, 932, 267 P.3d 422 (2011).

Here, Barton proposed a missing witness instruction and argued for its inclusion. The trial court provided its final proposed instructions to counsel and did not include a missing witness instruction. The court gave counsel an opportunity to object as required by CrR 6.15(c). Barton did not object to the omission. She does not argue that the trial court's refusal to give the instruction was a manifest error affecting a constitutional right. Her claim is therefore waived.

But, even if she had not waived her claim, Barton has not shown that she was entitled to the instruction she seeks. We review a trial court's decision to give a missing witness instruction for abuse of discretion. State v. Houser, 196 Wn. App. 486, 491, 386 P.3d 1113 (2016). The trial court abuses its discretion if its exercise of discretion is manifestly unreasonable or based on untenable grounds. Id. The missing witness doctrine permits the jury to infer that testimony would be unfavorable to a party if the evidence would properly be part of the case, the witness is within the control of the party in whose interest it would be to produce it, and that party fails to do so. Id. The missing witness instruction should be used sparingly. Id. at 492. It is not applicable where the uncalled witness is equally available to both parties. State v. Blair, 117 Wn.2d 479, 490, 816 P.2d 718 (1991). Instead, there must be such a community of interest, or a party must have such a superior opportunity or knowledge of a witness as to make it reasonably probable that the witness would have been called to testify but for the fact that their

4

testimony would have been damaging.  Id. (overruled on other grounds by State v. Abdulle, 174 Wn.2d 411, 412, 275 P.3d 1113 (2012)).  In other words, the witness must be "peculiarly available" to the party.  State v. Davis, 73 Wn.2d 271, 276, 438 P.2d 185 (1968).

Barton argues that Landells was peculiarly available to the State because he was interviewed by a police officer and had disclosed to the officer that he was moving out of state.  Barton claims, without citation to the record, that the State knew where Landells was moving and how to contact him.  But, Barton objected when the officer was about to testify concerning Landells's location, because he acknowledged that the detective "has no personal knowledge of where Mr. Landells currently resides."  As a result, when asked whether he knew Landells's whereabouts, the detective who interviewed him stated only that "[Landells] informed me he was moving to Montana I believe."  Barton has made no showing that the State had any more specific knowledge of Landells's location.  Under these circumstances, it was not manifestly unreasonable for the trial court to conclude that Landells was equally available to both parties.

We affirm.

_Appelwick, J._

WE CONCUR:

_Chun, J._          _Mann, C.J._

5