**FILED**
**MARCH 9, 2023**
In the Office of the Clerk of Court
WA State Court of Appeals, Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 38628-7-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| JOSHUA ALAN CONNELLY, | ) | |
| | ) | |
| Appellant. | ) | |

PENNELL, J. — Joshua Connelly appeals his convictions for attempting to elude a police vehicle and possession of a stolen motor vehicle. We affirm.

## FACTS

On the night of April 20, 2020, Officer Matthew Miller of the Chewelah Police Department attempted a traffic stop of a blue 1988 Buick Electra. A chase ensued through the streets of Chewelah after the Buick failed to stop. Officer Miller estimated the Buick was initially reaching speeds of around 60 miles per hour. He was able to observe two occupants in the vehicle: the driver and a passenger. Early in the chase, while executing a U-turn, the passenger was ejected from the Buick and somersaulted backward down a driveway. Officer Miller advised dispatch of the ejected passenger, and another responding deputy located the individual.

The chase continued down the main arterial through Chewelah at speeds approaching 90 miles per hour. The Buick then began zigzagging through side streets

before reaching some winding, rural roads. The Buick eventually entered a muddy, marshy area at the edge of a dense, thickly vegetated woods. Apparently unable to drive any further, the driver exited the Buick and successfully fled on foot.

When another deputy arrived on the scene with the ejected passenger, Officer Miller recognized the passenger as Stanley Richardson. Mr. Richardson indicated he had been at a Colville gas station earlier that night. He was hitchhiking to Spokane and the driver of the Buick agreed to give him a ride. Mr. Richardson said he had just met the driver of the Buick. He did not identify the driver.

Law enforcement discovered the Buick was registered to Marie Ocampo. Ms. Ocampo lived in the town of Republic, but also owned a separate parcel of land in rural Republic on Bacon Creek Drive. Ms. Ocampo had recently broken up with her longtime boyfriend, Joshua Connelly, but he was still residing at the Bacon Creek property while Ms. Ocampo lived in town. The Buick was also stored at the Bacon Creek property. According to Ms. Ocampo, Mr. Connelly was allowed to drive the Buick around the property—for example, to go fishing—but he was not authorized to leave the property with the Buick.

Ms. Ocampo had hoped to sell the Buick, but it was not running and needed a lot of work. On April 20, 2020, Ms. Ocampo went to the Bacon Creek property and

2

Mr. Connelly helped her install a new battery in the vehicle, as she was preparing to show it to a potential buyer the next day. The Buick had a finicky ignition: in Ms. Ocampo's words, "We have to wiggle it so many times" to get it to work, "[s]o therefore you have to leave the key in for it to start." Rep. of Proc. (RP) (Nov. 17, 2021) at 123. After installing the battery with Mr. Connelly's help, Ms. Ocampo left the Bacon Creek property, leaving the key in the ignition so it would not be an issue the next day when she met the prospective buyer.

On the morning of April 21, Ms. Ocampo arrived at the Bacon Creek property to meet with the buyer, who did not show up.[1] When she arrived, Ms. Ocampo discovered the Buick was nowhere to be found on the property. Ms. Ocampo had to leave to accompany her daughter to a doctor's appointment in Colville, so she spent only a short amount of time looking for the Buick. According to Ms. Ocampo, while she was waiting at the doctor's office, she received a phone call from a number she did not recognize. Ms. Ocampo said she answered the phone and recognized Mr. Connelly's voice. Mr. Connelly told Ms. Ocampo, "'Your vehicle was stolen, report it to the police.'" *Id.* at 126. He then abruptly ended the call. Ms. Ocampo had not yet told Mr. Connelly that she had been to

---

[1] According to Ms. Ocampo, at some later point in time the purported buyer informed her they were no longer interested.

3

the Bacon Creek property and could not find the Buick. She then called the police to report the Buick was stolen, and later went in person to fill out a stolen vehicle report form.

Meanwhile, based on Mr. Richardson's statement, police reviewed surveillance footage from the Colville gas station. Mr. Richardson could be seen depicted in the footage. In the video, Mr. Richardson was accompanied by a man in a tan jacket. Both Mr. Richardson and the other man were seen standing near, and then getting into, the blue Buick. Law enforcement was able to capture still images of the man in the tan jacket with his face visible. The images were distributed to local law enforcement and Mr. Connelly was identified as a suspect.

The State charged Mr. Connelly by information with attempting to elude a pursuing police vehicle[2] and possession of a stolen vehicle.[3] The case proceeded to a jury trial.

At trial in November 2021, the State called four law enforcement witnesses, along with Ms. Ocampo and an employee from the gas station. The State did not call Mr. Richardson. Included in the State's exhibits were three still images captured from

---

[2] RCW 46.61.024.
[3] RCW 9A.56.068. Mr. Connelly was also originally charged with reckless driving, but the information was later amended to exclude that charge.

the gas station surveillance footage. One showed the man in the tan jacket in the interior of the gas station and two images showed the Buick in the gas station parking lot. One of the exterior images had two individuals standing nearby the vehicle. The State also introduced other images of Mr. Connelly for comparison with the surveillance images.

Mr. Connelly's trial lawyer advanced a theory that the man on the surveillance footage was not Mr. Connelly, but a lookalike. Counsel elicited testimony from Ms. Ocampo that Mr. Connelly had a brother who resembled him and who also sometimes worked on her Buick. Ms. Ocampo agreed that Mr. Connelly's brother would have known about the key kept in the Buick's ignition.

During deliberations, the jury sent three questions to the judge. Those questions were: "Why was passenger not questioned or a witness?"; "Was brother aware of battery being changed/installed?"; and "Where did brother live 04/20/2020?" Clerk's Papers at 56. The judge responded: "No additional evidence will be provided." *Id*.

The jury returned a verdict of guilty on both charges. The jury also found an aggravating factor, concluding that a person besides Mr. Connelly or a pursuing law enforcement officer was threatened with physical injury or harm by Mr. Connelly's actions. Ostensibly, that person was Mr. Richardson.

The following month, the superior court entered its judgment and sentenced

Mr. Connelly to 29 months in prison. Mr. Connelly timely appeals.

ANALYSIS

*Sufficiency of evidence*

"The test for determining the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt." *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992).

Mr. Connelly contends insufficient evidence supports his convictions because the State only presented evidence that a man resembling him was seen near the Buick on the night of the chase. We disagree. The jurors were provided images of the man depicted in the surveillance footage. They were able to compare those images with photos of Mr. Connelly. They were also able to observe Mr. Connelly in person at trial. A fair-minded juror could conclude that the surveillance photos depicted Mr. Connelly. Defense counsel's contention that the images could have depicted Mr. Connelly's brother was a proper trial argument. But it does not detract from the sufficiency of the State's proof.

*Assistance of counsel*

Our federal and state constitutions both protect all criminal defendants' right to the effective assistance of counsel. *See State v. Grier*, 171 Wn.2d 17, 32, 246 P.3d 1260

(2011) (citing U.S. CONST. amend. VI; WASH. CONST. art. I, § 22); *State v. Thomas*,

109 Wn.2d 222, 229, 743 P.2d 816 (1987). A defendant appealing a criminal conviction

can obtain relief based on ineffective assistance of counsel by demonstrating both

deficient performance and prejudice. *Strickland v. Washington*, 466 U.S. 668, 687-88,

692, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *State v. McFarland*, 127 Wn.2d 322,

334-35, 899 P.2d 1251 (1995).

Mr. Connelly contends his trial counsel provided prejudicially deficient

representation in failing to request a missing witness instruction.[4] He argues that Stanley

Richardson, the passenger in the Buick the night of the chase, was a logical witness for

the State to call, and that the State's failure to call Mr. Richardson gives rise to an

inference his testimony may have been damaging to the State. Mr. Connelly argues the

evidence against him was thin and a missing witness instruction would plausibly have

moved the needle in a case where the State lacked direct evidence of the driver's identity.

A missing witness instruction advises the jury that it may presume the testimony

of an absent witness would have been unfavorable to the party who logically should have

---

[4] The State misunderstands Mr. Connelly's argument as a claim defense counsel should have called Mr. Richardson as a witness at trial. The State is correct that defense counsel may have had strategic reasons for declining to call Mr. Richardson, but that does not answer the question of whether defense counsel should have requested a missing witness instruction in response to the State's failure to call Mr. Richardson.

called the witness. *State v. Blair*, 117 Wn.2d 479, 485-86, 816 P.2d 718 (1991); *State v. Reed*, 168 Wn. App. 553, 571, 278 P.3d 203 (2012). Upon request, the trial court must give a missing witness instruction if the witness is "'peculiarly available'" to the other party, and the circumstances at trial make it probable that the witness would have been called but for the fact that their testimony would have been damaging. *State v. Davis*, 73 Wn.2d 271, 276-77, 438 P.2d 185 (1968), *overruled on other grounds by State v. Abdulle*, 174 Wn.2d 411, 275 P.3d 1113 (2012).

"The premise of a missing witness instruction is that there is no reasonable explanation why the party did not produce a favorable witness." *State v. Houser*, 196 Wn. App. 486, 493, 386 P.3d 1113 (2016). Here, because Mr. Connelly's attorney did not request a missing witness instruction, there is no factual record addressing the State's reasons for not calling Mr. Richardson to testify. It could be the State did not call Mr. Richardson because he was evading service of a subpoena. Or it could be the State made no effort to issue a subpoena. On the current record, we simply cannot say whether the trial court would have issued a missing witness instruction had one been requested. Without showing the instruction likely would have been issued, Mr. Connelly cannot establish deficient representation. *See State v. Calvin*, 176 Wn. App. 1, 14, 316 P.3d 496

(2013) (counsel performs deficiently in failing to request instruction only if instruction would have been issued).

If Mr. Connelly has evidence outside the current record suggesting Mr. Richardson was peculiarly available to the State and that the circumstances regarding the State's failure to call Mr. Richardson raise a suspicion that Mr. Richardson's testimony would have been unfavorable to the State, he may raise this issue through a personal restraint petition. *See McFarland*, 127 Wn.2d at 335. But Mr. Connelly has not proffered sufficient facts on this record on review to justify reversing his conviction.

CONCLUSION

The judgment of conviction is affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Pennell, J.

WE CONCUR:

_____       _____
Siddoway, C.J.                           Fearing, J.

9