IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 40172-3-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| TRISTAN DUANE BEEMAN, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

Staab, J. — Tristan Beeman was charged with first degree burglary and second degree assault after he unlawfully entered his former girlfriend's residence and physically assaulted her. After a jury found him guilty, the court found that Beeman was a persistent offender and imposed a sentence of life without the possibility of parole. On appeal, Beeman raises four issues. First, he contends that the trial court abused its discretion when it denied Beeman's motion for a missing witness instruction. Second, he argues that he was denied effective assistance of counsel when his attorney did not object to the State's failure to lay a proper foundation for a hearsay statement. Third, he asserts that the Persistent Offender Accountability Act (POAA), RCW 9.94A.570, is unconstitutional because it disproportionately impacts African Americans. Alternatively, he contends that he was denied his right to a jury trial when the court, not a jury, determined facts about his prior convictions that were used to increase the statutory

minimum and maximum for his offenses as a persistent offender, contrary to the Supreme

Court's recent decision in *Erlinger v. United States*, 602 U.S. 821, 144 S. Ct. 1840, 219

L. Ed. 2d 451 (2024).

We conclude that Beeman's arguments fail and affirm his convictions and

sentence.

BACKGROUND

Tristan Beeman was charged with first degree burglary–domestic violence and

second degree assault–domestic violence for breaking through his ex-girlfriend's door

and assaulting her. Prior to trial, the State subpoenaed the ex-girlfriend and indicated she

did not want to testify but stated it may call her to testify. However, the State also

indicated that because it had other witnesses it believed could establish the case, it was

not seeking a material witness warrant for the ex-girlfriend at that time.

Both parties filed motions in limine with the trial court. Beeman moved for an

order requiring the State to produce the ex-girlfriend for an interview and requested

dismissal if the interview did not occur. The motion acknowledged that the State had

previously scheduled an interview with the ex-girlfriend for November 17, 2023, but was

unable to secure her presence. Thereafter defense counsel attempted to contact the ex-

girlfriend by the phone number listed on the police report, but the number had been

disconnected. The State opposed the motion, explaining that it had gone "above and

beyond" trying to set up interviews but could not force the ex-girlfriend to be present.

2

Rep. of Proc. (RP) at 27.  The court stated that if she did not show up and the State was unable to prove its case, it would entertain a motion to dismiss.

The State requested the court find that certain statements made by witnesses were admissible under the hearsay exceptions for present sense impressions or excited utterances.  The court reserved on the issue.

The case proceeded to trial.  At the outset, defense counsel informed the court that if the ex-girlfriend did not appear to testify it would be seeking a missing witness instruction.  The State objected.  After the defense rested, the State noted that the witness was not "particularly available to the State."  RP at 264.  The State noted that it had asked the witness to appear on multiple occasions, but she did not want to participate.  And while the State had subpoenaed the witness for trial, it was unwilling to request a material witness warrant for a domestic violence victim when her testimony was not fundamentally important.  The State also pointed out that defense counsel could have subpoenaed the witness as well but chose not to.

Defense counsel responded that it would not subpoena a witness without knowing what she would say on the stand.  Furthermore, the ex-girlfriend's testimony was fundamental because she was the only person who could testify that Beeman broke through the door and entered the apartment.

The court denied Beeman's request for a missing witness instruction.  In support of this decision, the court made several findings.  First, the court found that the State tried

to coerce the ex-girlfriend to appear for trial, but she did not want to participate.  Defense

counsel made a tactical decision not to subpoena the ex-girlfriend even knowing that

some of her testimony would be favorable to Beeman.  Finally, the act of subpoenaing

the ex-girlfriend did not make her particularly available or within the control of the State.

The jury found Beeman guilty of both offenses.  Because this was Beeman's third

strike offense, the court imposed a persistent offender sentence of life without parole.

Beeman appeals.

ANALYSIS

1.  MISSING WITNESS INSTRUCTION

Beeman argues that the trial court abused its discretion and violated his

constitutional right to present a defense when it refused to give a missing witness

instruction.  Beeman contends that the failure to give the instruction denied him the

opportunity to argue his theory of the case—that the jury could presume, based on the

State's failure to call the ex-girlfriend, that her testimony would have been unfavorable to

the State.  The State responds that the court did not err when it declined to give the

instruction because the witness was equally available to both parties.

This court reviews the trial court's failure to give a missing witness instruction for

abuse of discretion.  *State v. Houser*, 196 Wn. App. 486, 491, 386 P.3d 1113 (2016); *see

also In re Det. of Alsteen*, 159 Wn. App. 93, 99, 244 P.3d 991 (2010).  A trial court

abuses its discretion when its decision is "'manifestly unreasonable or based upon

untenable grounds or reasons.'" *Houser*, 196 Wn. App. at 491. Additionally, "[w]e review de novo whether legal error in jury instructions could have misled the jury." *Id.*

A. *Missing Witness Instruction*

The purpose behind the missing witness instruction is to inform "the jury that it may infer from a witness's absence at trial that his or her testimony would have been unfavorable to the party who would logically have called that witness." *State v. Reed*, 168 Wn. App. 553, 571, 278 P.3d 203 (2012). However, "[t]he missing witness 'instruction should be used sparingly.'" *Houser*, 196 Wn. App. at 492 (emphasis omitted) (quoting 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 5.20 note on use at 177 (3d ed. 2008). Such an instruction is considered proper when (1) the missing witness's testimony is material and not cumulative, (2) the witness is particularly available to only one of the parties and not equally available to both of them, and (3) the witness's absence cannot be satisfactorily explained. *State v. Montgomery*, 163 Wn.2d 577, 598-99, 183 P.3d 267 (2008).

Although there are several factors the court considers, in this case, the parties largely dispute whether the witness was particularly available to the State. "A witness is not '[particularly] available' merely because the witness is subject to the subpoena power." *Reed*, 168 Wn. App. at 572. Instead, for a witness to be considered particularly available to one party,

> "there must have been such a community of interest between the party
> and the witness, or the party must have so superior an opportunity for
> knowledge of a witness, as in ordinary experience would have made it
> reasonably probable that the witness would have been called to testify
> for such party except for the fact that his testimony would have been
> damaging."

*Id.* (quoting *State v. Davis*, 73 Wn.2d 271, 277, 438 P.2d 185 (1968)).

Here, the trial court did not abuse its discretion when it denied Beeman's motion for a missing witness instruction. The court found that both parties had the ability to subpoena the witness, and Beeman made a strategic choice to forego a subpoena while claiming that some of her testimony would have been favorable to the defense. Additionally, the court also found that reasons other than damaging testimony supported the State's decision to not seek a material witness warrant, noting that the State did not wish to retraumatize a domestic violence victim when it was not necessary. *See Montgomery*, 163 Wn.2d at 599 (noting that "the doctrine applies only if the witness's absence is not satisfactorily explained"); *see, e.g., Reed*, 168 Wn. App. at 572-74 (missing witness was satisfactorily explained with domestic violence victim subject to witness tampering did not appear). These findings support the court's decision to deny the request for a missing witness instruction.

Nevertheless, Beeman contends that the State had the witness under subpoena, knew of her location, and could have pursued a material witness warrant but chose not to, making her particularly available to the State. This argument fails for several reasons.

First, a witness is not particularly available to one party merely because they are subject

to subpoena power. *Reed*, 168 Wn. App. at 572. Second, as discussed, the failure to

pursue a material witness warrant was satisfactorily explained. Finally, as explained by

the court, if the defense felt that the testimony would be helpful to its case, they could

have chosen to subpoena the witness rather than rely on the State.

### B. Right to Present a Defense

Beeman contends that the trial court's failure to give the missing witness

instruction violated his right to present a defense by denying him the opportunity to argue

that the jury could presume from the State's failure to call the ex-girlfriend as a witness,

that her testimony would have been detrimental to the State. We disagree.

The United States and Washington State Constitutions protect a criminal

defendant's right to present a defense. U.S. CONST., amend. VI; WASH. CONST., art. I, §

22. "We review claims that an omitted jury instruction violated the defendant's right to

present a defense de novo." *State v. Butler*, 200 Wn.2d 695, 718-19, 521 P.3d 931

(2022). "Jury instructions are constitutionally adequate 'when, taken as a whole, they

properly inform the jury of the applicable law, are not misleading, and permit the

defendant to argue [their] theory of the case.'" *State v. Knapp*, 197 Wn.2d 579, 586, 486

P.3d 113 (2021) (quoting *State v. Tili*, 139 Wn.2d 107, 126, 985 P.2d 365 (1999)).

Beeman's argument fails for several reasons. First, the presumption is only

available when it is reasonably probable that the reason for not calling the witness was

that the witness's testimony would be damaging to the party for whom the witness was particularly available. *Reed*, 168 Wn. App. at 572. Here, the court found that the State had other legitimate reasons for not calling the witness.

Regardless, in considering whether an evidentiary decision violates a defendant's right to present a defense, we distinguish "between evidence that merely bolsters credibility and evidence that is necessary to present a defense." *State v. Jennings*, 199 Wn.2d 53, 66-67, 502 P.3d 1255 (2022). The missing witness inference is used to challenge the credibility of the party's case by suggesting that the party's failure to produce the witness indicates that the testimony would not support their position. *State v. Dixon*, 150 Wn. App. 46, 54-55, 207 P.3d 459 (2009). The inference is not substantive evidence. Despite the negative inference, the jury cannot speculate as to what the witness would have said and then use that speculation as evidence.

Finally, the failure to give the missing witness instruction did not prevent Beeman from arguing that the State's evidence was not credible or sufficient. Beeman argued that the State failed to meet its burden of proof because none of the testifying witnesses had observed the events supporting the charges, and the only people who knew what happened were the ex-girlfriend and Beeman.

The trial court did not abuse its discretion in denying Beeman's request for the missing witness jury instruction and the failure to give the instruction did not violate Beeman's constitutional right to present a defense.

2. INEFFECTIVE ASSISTANCE OF COUNSEL

Beeman contends he was denied effective assistance of counsel when his attorney

failed to object after the State failed to lay a foundation for a hearsay exception.

*A. Additional Background*

During trial, Beeman's ex-girlfriend's mother was called to testify. The mother

testified that when she left for work, she was not aware of any damage to her daughter's

front door. The State posed the following questions to the mother:

[STATE]: . . . did you make a call to 911 that morning, November 2nd?

[MOTHER]: Yes.

[STATE]: Why?

[MOTHER]: Because [my daughter] called my cell phone and told me that she—

[DEFENSE]: Objection. Hearsay.

THE COURT: I'm going to go ahead and sustain it without foundation.

[STATE]: When you were at work, you said that you could see the—you could
see [your daughter]'s apartment, [your daughter]'s house from that window?

[MOTHER]: Yes.

[STATE]: When you were at work that morning, could you see anybody
approaching or walking up to [your daughter]'s house?

[MOTHER]: If I looked outside, I could.

[STATE]: And did you see anybody walk up to her house that morning?

[MOTHER]: I did see Tristan out there, yes.

9

[STATE]:  And when you say you saw him, was he standing there?  Was he approaching the house?  What was he doing?

[MOTHER]:  I don't recall.  If I remember, there may have been a vehicle there that he was by.  I didn't see him at the door or kicking in the door.  I heard that on the phone.

[STATE]:  Okay. Were you concerned by [your daughter]'s call?

[MOTHER]:  Of course I'm concerned about the safety of my kids.

[STATE]:  Why did you have concern about her safety?

[MOTHER]:  Because she said he was threatening to kick the door in.

   [DEFENSE]:  Objection.  Hearsay.

   THE COURT:  I'm going to go ahead and sustain it.

. . .

   THE COURT:  If you want to ask her some additional questions, feel free.

. . . .

[STATE]:  So while you were at work, you received the call from [your daughter].  Did she say who was near her home?

[MOTHER]:  Yes.

[STATE]:  Who did—did she state what was happening?

[MOTHER]:  Yes.

[STATE]:  And when she was describing these things to you—I guess let me ask a back-up question.  Are you pretty familiar with [your daughter]'s demeanor and her normal character?

[MOTHER]:  I would say so.

[STATE]: Okay.  And that morning when she called you on November 2nd, what was her tone?  What was her demeanor that morning over the call?

10

[MOTHER]:  I talked to her a couple times.

[STATE]:  Okay.

[MOTHER]:  The first time she was concerned Tristan is outside.  She didn't want to let him in.

RP at 210-12.  Defense counsel did not object to the last set of questions.

B.  *Ineffective Assistance of Counsel Standards*

Both the United States and Washington State Constitutions guarantee the right to the assistance of counsel.  U.S. CONST. amend VI; WASH CONST. art. I, § 22.  This court reviews ineffective assistance of counsel claims de novo.  *State v. Estes*, 188 Wn.2d 450, 457, 395 P.3d 1045 (2017).  Washington has adopted the two-prong test outlined in *Strickland v. Washington*[1] to evaluate "whether a defendant had constitutionally sufficient representation."  *Id*.  Under the *Strickland* test, the defendant must make a showing of both (1) deficient performance; and (2) resulting prejudice to succeed on a claim of ineffective assistance of counsel.  *Id*. at 457-58.

Performance will be considered deficient "if it falls 'below an objective standard of reasonableness based on consideration of all the circumstances.'"  *Id*. at 458 (quoting *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995)).  However, "Washington courts also indulge a strong presumption that counsel's representation was

---

[1] 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

11

reasonable." *Estes*, 188 Wn.2d at 458. Furthermore, representation will not be

considered deficient if it can be characterized as a legitimate trial strategy or tactic. *Id.*

Deciding whether or not to object is often considered a classic example of a trial

strategy or tactic. *State v. Stotts*, 26 Wn. App. 2d 154, 165, 527 P.3d 842 (2023). For

example, failing to object to evidence that otherwise may be inadmissible can be

considered a legitimate tactic "to avoid highlighting certain evidence." *Id*. In this

context, Washington courts typically presume "'the failure to object was the product of

legitimate trial strategy.'" *Id.* (quoting *State v. Johnston*, 143 Wn. App. 1, 20, 177 P.3d

1127 (2007)). For this reason, even failing to object a few times is typically not cause to

find that an attorney's representation is deficient. *Id*. at 166. Where the defendant's

ineffective assistance claim is based on the failure to object, "'the defendant must show

that the objection would likely have succeeded.'" *Vazquez*, 198 Wn.2d 239, 248, 494

P.3d 424 (2021) (quoting *State v. Crow*, 8 Wn. App. 2d 480, 508, 438 P.3d 541 (2019)).

Here, Beeman alleges defense counsel was deficient for failing to object to the

mother's hearsay testimony because a proper foundation for a hearsay exception was not

laid on the record. This argument fails for several reasons. First, given the presumption

that counsel is effective, it is likely that the failure to object was tactical. It is clear that

defense counsel was conscious of hearsay statements although it is unclear what defense

counsel knew prior to the mother's testimony. It is reasonable to assume that counsel

knew that a foundation could be laid if an objection were raised and believed the foundational evidence would do more harm than good.

Second, the objection likely would not have been sustained. The statement would have qualified as an excited utterance because Beeman was near her home, she made the statement to McCullough that she was concerned he was outside and did not want to let him in, thus making the statement under the stress of the event that related to it. ER 803(a)(2).

Beeman has failed to demonstrate deficient performance. Because Beeman failed to demonstrate deficient performance, his ineffective assistance argument fails. *State v. Bertrand*, 3 Wn.3d 116, 128, 546 P.3d 1020 (2024) (failure to show either prong of the test for ineffective assistance of counsel defeats the claim).

3. WHETHER THE POAA IS UNCONSTITUTIONAL

Beeman argues, for the first time on appeal, that the mandatory imposition of life without parole under the POAA is unconstitutional as applied because of its racially disproportionate impact. We decline to review this unpreserved error.

*A.    Additional Background*

Prior to trial, the State notified Beeman that a conviction of either offense could classify him as a "persistent offender" if he had been convicted on two previous occasions for other "most serious offenses" as defined in RCW 9.94A.030(32). Additionally, if classified as a persistent offender, the sentence would be "life without the

13

possibility of parole." Clerk's Papers (CP) at 76. After Beeman was found guilty on both counts, the State filed a sentencing brief, which included copies of Beeman's prior judgments. Beeman had previously been convicted of first degree robbery in April 1998. He then committed second degree manslaughter on January 13, 2003, and was later sentenced on March 7, 2006, after he pled guilty. The defense did not file a sentencing memorandum.

At sentencing, Beeman argued that the manslaughter conviction was facially invalid because it was corrected post-appeal so that the combined incarceration and community custody would not exceed the maximum sentence. Additionally, Beeman requested that the court consider his youthfulness at the time of his first strike, the robbery conviction.

After the court reviewed the exhibits that had been presented, it found that Beeman was found guilty on April 16, 1998, and sentenced on that date for first degree robbery, noting that it was a first strike offense. The court also found that the second degree manslaughter and first degree unlawful possession of a firearm conviction would give Beeman his second strike. As a result, the court found the current offense was a third strike, and sentenced Beeman to a life sentence without the possibility of parole.

B. *Analysis*

In his opening brief, Beeman fails to acknowledge that his challenge to the constitutionality of this statute is unpreserved. Nor does he set forth grounds for

14

reviewing an unpreserved error. In his reply brief, he contends we should review the issue as a manifest error affecting a constitutional right under RAP 2.5(a)(3) or under our discretionary authority as provided in RAP 2.5(a). For several reasons we decline to review this issue.

Generally, this court will not review a claim of error raised for the first time on appeal unless it is a manifest error affecting a constitutional right. RAP 2.5(a)(3). "Stated another way, the appellant must 'identify a constitutional error and show how the alleged error actually affected the [appellant]'s rights at trial.'" *State v. O'Hara*, 167 Wn.2d 91, 98, 217 P.3d 756 (2009) (alteration in original) (quoting *State v. Kirkman*, 159 Wn.2d 918, 926-27, 155 P.3d 125 (2007)). Under this rule, the defendant "must demonstrate (1) the error is manifest, and (2) the error is truly of constitutional dimension." *Id*.

Beeman fails to demonstrate manifest error. "Manifest error" is an "'error that is plain and indisputable, and that amounts to a complete disregard of the controlling law or the credible evidence in the record.'" *Id.* at 100 n.1 (quoting BLACK'S LAW DICTIONARY 622 (9th ed. 2009)). As the State points out, it would not be obvious to a trial court that the POAA is unconstitutional.

Even if we were to consider the issue under our discretionary power, the record is insufficiently developed. *See McFarland*, 127 Wn.2d 322, 333. The data Beeman presents on appeal was not presented at sentencing, thus denying the trial court an

15

opportunity to consider it.  Likewise, the failure to present this data at sentencing denied

the State an opportunity to contest it.  Case law demonstrates that this kind of challenge

typically requires thorough studies on disproportionality.  *See*, *e.g., State v. Gregory*, 192

Wn.2d 1, 12-13, 427 P.3d 621 (2018) (defendant commissioned thorough study on the

effect of race, vetted and was then reviewed by the supreme court commissioner).

Moreover, while Beeman argues that statistics and data demonstrate bias on a

systemic level, he fails to contend that the alleged errors specifically applied to his

situation.  *City of Redmond v. Moore*, 151 Wn.2d 664, 668-69, 91 P.3d 875 (2004) ("An

as-applied challenge to the constitutional validity of a statute is characterized by a party's

allegation that application of the statute *in the specific context of the party's actions* or

intended actions is unconstitutional." (emphasis added).

Finally, our Supreme Court, and most recently, Division Two, have upheld the

POAA against similar challenges.  *State v. Moretti*, 193 Wn.2d 809, 446 P.3d 609 (2019);

*State v. Nelson*, 31 Wn. App. 2d 504, 550 P.3d 529, *review denied*, 3 Wn.3d 1030 (2024).

In *Nelson*, this court addressed the argument being raised by Beeman and upheld the

POAA after concluding that while the "POAA may have a racially disproportionate

impact, [the defendant] has not shown that the POAA is administered in a racially

disproportionate manner." *Nelson*, 31 Wn. App. 2d at 507.  Beeman argues that *Nelson*

was wrongly decided because it failed to consider that the disparate impact is informed

by the wide discretion held by police and prosecutors prior to sentencing.  Contrary to

16

Beeman's argument, the court in *Nelson* recognized that the "disproportionate impact likely is due to systemic racial injustice throughout the criminal justice system rather than the administration of the POAA," but concluded that "[w]e are not in a position to address these systemic problems." *Id*. at 517.

Ultimately, we conclude that Beeman failed to preserve an as-applied constitutional challenge to the POAA and fails to demonstrate that we should consider the issue as a manifest constitutional error affecting a constitutional right.

4. RIGHT TO JURY TRIAL FOR POAA SENTENCE

For the first time on appeal, Beeman contends his sentence was entered in violation of his constitutional right to a jury trial when a judge, rather than a jury, made the requisite finding that he was a persistent offender under RCW 9.94A.570. He asserts that the United States Supreme Court's decision in *Erlinger v. United States*, 602 U.S. 821, requires a jury to make this finding. The State contends that we should not review the unpreserved error, *Erlinger* does not clearly apply, and any error is harmless.

*A. Error Preservation*

Generally, this court will not review a claim of error raised for the first time on appeal unless it is a manifest error affecting a constitutional right. RAP 2.5(a)(3). In his opening brief, Beeman does not acknowledge the lack of objection or assert any grounds for reviewing the unpreserved error. In his reply brief, Beeman does not contend the error is manifest but instead requests review in light of *Erlinger*.

17

While Beeman does not provide analysis on our ability to review an unpreserved

error in light of subsequent decisions, the State acknowledges that waiver may not apply

when an intervening decision material to the defendant's case is at issue. While the

failure to object at trial generally waives appellate review of an issue, this rule does not

apply when application of the general rule would be counterproductive. As such, the rule

on issue preservation does not apply where these conditions are present:

> (1) a court issues a new controlling constitutional interpretation material to
> the defendant's case, (2) that interpretation overrules an existing controlling
> interpretation, (3) the new interpretation applies retroactively to the
> defendant, and (4) the defendant's trial was completed prior to the new
> interpretation.

*State v. Robinson*, 171 Wn.2d 292, 305, 253 P.3d 84 (2011). Here, the State argues that

*Erlinger* is not material or applicable to the issue raised by Beeman.

### B. Applicability of Erlinger

"The Fifth and Sixth Amendments placed the jury at the heart of our criminal

justice system." *Erlinger*, 602 U.S. at 831. In particular, the Fifth Amendment to the

United States Constitution provides that no "person shall be . . . deprived of life, liberty,

or property, without due process of law." U.S. CONST. amend. V. Additionally, the Sixth

Amendment guarantees a criminal defendant "speedy and public trial, by an impartial

jury." U.S. CONST. amend. VI. Generally, these Amendments have been construed to

require that any fact that increases the statutory maximum penalty or the mandatory

18

minimum penalty for a crime is an element that "must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000); *Alleyne v. United States*, 570 U.S. 99, 133 S. Ct. 2151, 186 L. Ed. 2d 314 (2013). However, as a narrow exception to this rule, a sentencing court may consider "'the fact of a prior conviction'" so long as it only determines "'what crime, with what elements, the defendant was convicted of.'" *Erlinger*, 602 U.S. at 838 (quoting *Alleyne v. United States*, 570 U.S. 99, 111 n.1, 133 S. Ct. 2151, 186 L. Ed. 2d 314 (2013)) (quoting *Mathis v. United States*, 579 U.S. 500, 512, 136 S. Ct. 2243, 195 L. Ed. 2d 604 (2016)).

Following *Apprendi* and *Alleyne*, our state Supreme Court had reaffirmed that application of the POAA does not require a jury determination. *State v. Wheeler*, 145 Wn.2d 116, 117, 34 P.3d 799 (2001); *State v. Witherspoon*, 180 Wn.2d 875, 892-93, 329 P.3d 888 (2014). Beeman contends that *Erlinger* overruled these cases.

In *Erlinger*, the defendant pleaded guilty to felon unlawfully in possession of a firearm in violation of 18 U.S.C. § 922(g), which carries a statutory maximum sentence of ten years in prison. 602 U.S. at 825. The government charged Erlinger under the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e)(1), which increased the mandatory minimum term to fifteen years and the maximum term to life if the defendant had three prior convictions for predicate offenses "committed on occasions different from one another." *Id.*; *see also* 18 U.S.C. § 924(e)(1). At resentencing, the government

produced evidence that decades earlier Erlinger had committed four burglaries within the span of a few days. *Id*. at 826-27. Erlinger objected, arguing that the burglaries had not occurred on separate occasions but instead were part of a single criminal episode, and did not qualify as three prior offenses the ACCA requires. *Id*. at 827. The question addressed by the Supreme Court was "whether a judge may decide that a defendant's past offenses were committed on separate occasions under a preponderance-of-the-evidence standard, or whether the Fifth and Sixth Amendments require a unanimous jury to make that determination beyond a reasonable doubt." *Id*. at 825.

Ultimately, the Supreme Court held that whether the past offenses occurred on different occasions was a fact-intensive task to be determined by a jury. *Erlinger*, 602 U.S. at 834. Indeed, "ACCA's occasions 'inquiry' can require an examination of a 'range' of facts, including whether the defendant's past offenses were 'committed close in time,' whether they were committed near to or far from one another, and whether the offenses were 'similar or intertwined' in purpose and character." *Id*. at 828 (quoting *Wooden v. United States*, 595 U.S. 360, 369, 142 S. Ct. 1063, 212 L. Ed. 2d 187 (2022)).

While the decision in *Erlinger* was significant, the court made clear that its holding was limited to the conclusion that a jury must decide ACCA's occasions inquiry. *Erlinger*, 602 U.S. at 835. *Erlinger* did not overrule the prior conviction exception. *Id*. at 838. Under the prior conviction exception, a judge may "'determine what crime, with what elements, the defendant was convicted of.'" *Id*. (quoting *Mathis v. United States*,

579 U.S. 500, 512, 136 S. Ct. 2243, 195 L. Ed. 2d 604 (2016)).  To properly make this determination, "a court may need to know the jurisdiction in which the defendant's crime occurred and its date in order to ascertain what legal elements the government had to prove to secure a conviction in that place at that time."  *Id*. at 839.

Application of the POAA is different from the application of ACCA.  Whereas ACCA requires a court to determine if the defendant's prior convictions were "committed on occasions different from one another," 18 U.S.C. § 924(e)(1), the POAA requires a court to determine whether the defendant was convicted of predicate offenses before the current crime was committed and also to determine whether at least one of the prior offenses occurred before the commission of any other predicate offense.  RCW 9.94A.030(37).  Beeman argues that the date when a crime occurs or the date when a crime is committed is factual and while usually this determination is straightforward, it may involve an examination of a range of facts similar to the factual scenario presented in *Erlinger*.

Here, we do not need to decide whether *Erlinger* changes the analysis of our POAA jurisprudence because even if it does, any error was harmless beyond a reasonable doubt.  The "[f]ailure to submit a sentencing factor to the jury, like failure to submit an element to the jury" is subject to harmless error review.  *Washington v. Recuenco*, 548 U.S. 212, 222, 218, 126 S. Ct. 2546, 165 L. Ed. 2d 466 (2006) (citing *Neder v. United States*, 527 U.S. 1, 9, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999)).

At sentencing, the State submitted uncontroverted evidence that Beeman was convicted of first degree robbery committed in 1998 and second degree manslaughter committed in 2003. At sentencing, Beeman raised a legal challenge to the manslaughter conviction, arguing that it was facially invalid based on the sentence imposed, but this argument was rejected by the superior court (and not raised again on appeal). Otherwise, Beeman did not challenge the evidence of these prior convictions. On appeal, he does not address the State's argument that any error was harmless.

We affirm Beeman's sentence. We are convinced beyond a reasonable doubt that even if the application of the POAA required findings by a jury, any reasonable jury would have reached the same result. *State v. Watt*, 160 Wn.2d 626, 635, 160 P.3d 640 (2007).

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Staab, J.

WE CONCUR:

_____    _____
Lawrence-Berrey, C.J.                   Murphy, J.